[No. C029377. Third Dist. May 24, 1999.]

OZELLA FAYE HALEY et al., Plaintiffs and Appellants, v.
DOW LEWIS MOTORS, INC., et al., Defendants and Respondents.

## COUNSEL

Anthony J. Poidmore for Plaintiffs and Appellants.

Lewis, D'Amato, Brisbois & Bisgaard and Claudia J. Robinson for Defendants and Respondents.

## Opinion

**MORRISON, J.**—Plaintiffs Phillip Haley and Ozella Faye Haley brought suit against defendants Dow Lewis Motors, Inc., and Larry Dow Lewis on a variety of causes of action arising out of the termination of their employment with Dow Lewis Motors. During Ozella's deposition, it came out that the Haleys had filed for chapter 7 bankruptcy.[1] Defendants moved for judgment on the pleadings, contending plaintiffs' causes of action belonged to the bankruptcy estate. Plaintiffs sought to amend their complaint, to substitute the bankruptcy trustee as party plaintiff. The trial court granted the motion for judgment on the pleadings and denied the motion to amend. Plaintiffs appeal. They contend the causes of action that accrued after their filing of the petition in bankruptcy are not property of the bankruptcy estate and that the trial court erred in refusing to allow the amendment to the complaint. We agree as to both points. Accordingly, we reverse.

### Factual and Procedural Background

On January 29, 1996, plaintiffs filed a complaint for damages against defendants. They alleged causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, wrongful termination, breach of Labor Code section 1102.5, refusal to pay wages under Labor Code sections 201 and 203, inducing them to move by false representations (Lab. Code, §§ 970, 972), fraud and misrepresentation, defamation, loss of consortium, intentional infliction of emotional distress, and negligent infliction of emotional distress.

The complaint alleged plaintiffs were living in Redding in early 1994. Defendants induced Ozella to come to work for them in Yuba City. Defendants and Ozella entered into an oral employment contract, under which she would be their finance manager and make commissions equal to her predecessor. Defendants told her the previous finance manager made approximately $9,500 per month. Ozella accepted the position and commuted to work from Redding from March until August 1994.

In August 1994, defendants entered into an employment contract with Phillip, Ozella's husband. He would work as general manager for defendant's automobile dealership at a salary of $7,000 a month. In reliance on defendants' promises, plaintiffs moved to Yuba City. Just after plaintiffs made a down payment on a house in Yuba City, defendants reduced Phillip's

---

[1]Chapter references are to the Bankruptcy Reform Act of 1978, 11 United States Code sections 101 through 1330. Chapter 7 is found at title 11 United States Code section 701 et seq.

salary to $5,000 per month. Ozella never made the promised commissions; she averaged only $2,622.62 per month.

In September 1994, Ozella undertook additional responsibilities for which she was to receive an additional $1,750 per month. Instead, she was paid only $1,500 in September and October and nothing thereafter. In mid-October 1994, plaintiffs did not receive regular paychecks, but checks for $0. They were told this reflected withholdings for income taxes that had not been made earlier. In December 1994, their checks were again short. They were told this reflected "draws" on their salary, as well as unpaid income taxes.

In early 1995, knowing the plaintiffs' dire financial situation due to the minimal paychecks, defendants induced plaintiffs to sign a promissory note for $4,000. In early February, defendants announced $1,500 would be withheld from Ozella's paycheck because a customer had not made a down payment. Ozella found the working conditions intolerable and was forced to leave employment with defendants.

When Phillip went to pick up Ozella's last paycheck, he was told she still owed $3,000 on the promissory note and that amount was deducted from her paycheck, leaving zero. Once again, defendants induced Phillip to sign a promissory note for $3,000. When Ozella sought work in Yuba City, defendants told prospective employers that she had embezzled funds and had a gambling problem. These statements were false. Defendants made the same false statements to other business people. On November 30, 1995, defendants terminated Phillip. They cited financial reasons, but hired another general manager.

Defendants moved to compel arbitration under an arbitration agreement Ozella had signed. The court ordered arbitration.

The court assumed jurisdiction over the practice of plaintiffs' attorney based on unrelated State Bar disciplinary proceedings. Plaintiffs substituted another attorney.

On April 2, 1997, plaintiffs filed a first amended complaint, adding a cause of action on behalf of Phillip for defamation. The amended complaint alleged that from December 1, 1995 through January 2, 1996, defendants made defamatory statements about Phillip. These statements included that he was fired for sleeping during work hours, failing to attend meetings, and refusing to train employees.

On July 16, 1997, during the deposition of Ozella in preparation for arbitration, she revealed that plaintiffs had filed a chapter 7 bankruptcy

petition on or about May 3, 1995. She claimed the bankruptcy had been precipitated by the events occurring during plaintiffs' employment with defendants.

Defendants moved for judgment on the pleadings, contending that plaintiffs lacked standing to sue due to the bankruptcy. They requested the court take judicial notice of the bankruptcy file pursuant to Evidence Code section 452.[2] Defendants argued that all of plaintiffs' causes of action belonged to the bankruptcy estate. They contended that all of the material facts and events giving rise to the causes of action, with the possible exception of Phillip's slander action, occurred prior to the filing of the bankruptcy petition on May 3, 1995. As to the slander claim, and any other causes of action arguably accruing subsequent to the petition, defendants argued they would be considered part of the bankruptcy estate.

Plaintiffs opposed the motion, urging they were taking steps to cure the deficiency in standing. They had contacted the bankruptcy trustee, who agreed to help preserve the lawsuit as an asset of the bankruptcy estate. He successfully petitioned to reopen the bankruptcy case. The trustee had submitted a petition to have plaintiffs' counsel employed to prosecute the lawsuit on behalf of the estate. Plaintiffs claimed in their memorandum of points and authorities that they had asked their bankruptcy attorney if they should include the amounts withheld by defendants as assets. Plaintiffs had no documentation that they were owed these amounts, so their bankruptcy attorney concluded it was not worth pursuing and could get Phillip fired. Plaintiffs believed they had no claim, so they did not list any claims against defendants as assets. They later provided declarations to this effect.

Plaintiffs further asserted that the causes of action related to Phillip's wrongful termination and defamation accrued after the filing of the bankruptcy petition and even after the discharge of their debts; these causes of action belong to plaintiffs, not the bankruptcy estate. They provided documentation to show their debts were discharged August 6, 1995.

Plaintiffs moved pursuant to Code of Civil Procedure section 473 to amend the complaint to name the bankruptcy trustee as party plaintiff. The proposed amendment sought to include as plaintiff in the caption "Trustee Hank Spacone Real Party in Interest" and to add to the allegations "Plaintiff HANK SPACONE is the real party in interest as to all causes of action accruing prior to May 3, 1995."

The trial court granted the motion on the pleadings. Relying on *Bostanian v. Liberty Savings Bank* (1997) 52 Cal.App.4th 1075 [61 Cal.Rptr.2d 68], it

---

[2]The bankruptcy papers defendants filed indicated plaintiffs filed their petition May 3, 1995. On the schedule of assets there is no entry for contingent claims.

found all causes of action belonging to plaintiffs when the bankruptcy petition was filed and those accruing thereafter became a part of the bankruptcy estate. The court took judicial notice of the bankruptcy matters. Since the trustee had not abandoned the causes of action, plaintiffs had no standing to assert them.

The court denied the motion to amend the complaint. It noted this case was not the traditional "relation back" case. It found plaintiffs were fully aware they had filed a chapter 7 petition, failed to list these causes of action as assets, and then proceeded to prosecute this action in contravention of bankruptcy law. The court declined to apply the rule of *Jensen* v. *Royal Pools* (1975) 48 Cal.App.3d 717 [121 Cal.Rptr. 805], and instead relied upon *Coats* v. *K-Mart Corp.* (1989) 215 Cal.App.3d 961 [264 Cal.Rptr. 12]. The court found plaintiffs did not act in good faith in prosecuting either the bankruptcy action or this action. Further, the court found plaintiffs' proposed amendment inadequate as it did not explain who Hank Spacone was or the history of the bankruptcy proceeding. The court found the amendment would be subject to an instant demurrer.

DISCUSSION

I

Plaintiffs contend that only the causes of action that had accrued as of May 3, 1995, the date they filed the petition in bankruptcy, belong to the bankruptcy estate. They contend causes of action accruing thereafter belong to them and they have standing to prosecute them. They assert that Phillip's wrongful termination occurred in November 1995, well after the petition was filed. The alleged defamatory remarks by defendants about him were made in December 1995 and January 1996. Plaintiffs contend the causes of action based on Phillip Haley's wrongful termination and defendants' defamation of Phillip Haley, as well as related causes of action for loss of consortium and infliction of emotional distress, remain theirs. As to these causes of action, plaintiffs contend the trial court erred in granting judgment on the pleadings.

In support of this argument, plaintiffs provide scant authority. They cite only portions of a Senate report. Although poorly presented and supported, plaintiffs' contention has merit.

The filing of a petition in bankruptcy commences the case and creates a bankruptcy estate. (11 U.S.C. § 541(a).) The bankruptcy estate includes all of the debtor's legal and equitable interests in property as of the

commencement of the case. (11 U.S.C. § 541(a)(1).) The scope of section 541 is broad and "property" includes causes of action. (*Bostanian* v. *Liberty Savings Bank, supra,* 52 Cal.App.4th 1075, 1083.) "It is of course indisputable that any causes of action which accrue to a debtor who has filed for relief under the Bankruptcy Act before the filing of the bankruptcy petition become the property of the bankruptcy estate and may thereafter be prosecuted only by the trustee or a duly appointed representative of the estate. [Citations.]" (*Chrysler Credit Corp.* v. *B.J.M., Jr., Inc.* (E.D.Pa. 1993) 834 F.Supp. 813, 839.)

■ When a debtor files a chapter 7 petition, two estates are created, a bankruptcy estate and a postpetition estate belonging to the debtor. (*Matter of Brannan* (Bankr. N.D.Ga. 1984) 40 B.R. 20, 23, fn. 2.) Bankruptcy law defines the property of the bankruptcy estate as only that property that existed when the petition was filed. (*In re Thomas* (Bankr. N.D.Tex. 1988) 93 B.R. 475.) Pursuant to the "fresh start" policy for debtors under chapter 7, a debtor may transfer to the postpetition estate any property deemed exempt from the chapter 7 estate, postpetition earnings, and any property acquired after filing (other than that governed by the exceptions of 11 U.S.C. § 541(a)(5)).[3] (*Matter of Brannan, supra,* 40 B.R. 20, 23, fn. 2.) Where events that give rise to a cause of action occur following the filing of the chapter 7 petition, that cause of action is not property of the bankruptcy estate. (*In re Bobroff* (Bankr. C.D.Pa. 1984) 43 B.R. 746, 751, affd. 766 F.2d 797.)

Relying on *Bostanian* v. *Liberty Savings Bank, supra,* 52 Cal.App.4th 1075, defendants argue, and the trial court found, that even causes of action that accrue after the filing of the petition belong to the bankruptcy estate.[4] In *Bostanian,* the plaintiffs, a married couple, owned a residence. In 1993, Mr. Bostanian filed for bankruptcy under chapter 11 (11 U.S.C. § 1101 et seq.); his wife did not. Subsequently, Liberty Savings Bank foreclosed on its deed of trust on the family residence and the property was sold at auction. The plaintiffs then sued to set aside the foreclosure sale. Mr. Bostanian's bankruptcy was converted to chapter 7. The plaintiffs' complaint was dismissed and the plaintiffs appealed. (*Bostanian, supra,* at p. 1078.)

The appellate court held the cause of action against the bank was an asset of the bankruptcy estate. It accepted the defendant's contention that "a cause

[3]Under title 11, United States Code section 541(a)(5), certain property acquired within 180 days of filing the petition by bequest, devise, inheritance, property settlement, divorce decree, or as beneficiary of a life insurance policy is property of the bankruptcy estate.

[4]Plaintiffs fail to address *Bostanian* in their opening brief. In reply, they note the August 1998 edition of Shepard's California Citations indicates the case was ordered not published. This was an error; it was corrected in the October 1998 edition.

of action which accrues subsequent to a chapter 11 filing is property of the bankruptcy estate which, absent abandonment, only the trustee can pursue." (*Bostanian* v. *Liberty Savings Bank, supra,* 52 Cal.App.4th at p. 1083.) The trial court based its finding on both (a)(7) and (6) of 11 United States Code section 541. (*Bostanian, supra,* 52 Cal.App.4th at pp. 1083-1084.) Section 541(a)(7) provides that property of the bankruptcy estate includes "[a]ny interest in property that the estate acquires after the commencement of the case." Section 541(a)(6) includes as estate property "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case."

We agree with the result in *Bostanian* v. *Liberty Savings Bank, supra,* 52 Cal.App.4th 1075. The cause of action challenging the foreclosure sale was the property of the bankruptcy estate because it arose from the Bostanians's interest in the residence. That residence was property of the bankruptcy estate. This result is explained in *In re Acton Foodservices Corp.* (Bankr. D.Mass. 1984) 39 B.R. 70, on which the *Bostanian* court relied. In *Acton,* the debtor had a prepetition interest in a corporation that owned a radio station. Both the debtor and the corporation filed for bankruptcy. The radio station was then sold. The debtor asserted a claim of fraud in connection with the sale. The bankruptcy court held the cause of action for fraud belonged to the bankruptcy estate and the debtor had no standing to assert it. The court explained that any legal or equitable interest the debtor had in the radio station became property of his bankruptcy estate. Any cause of action that accrued as a violation of those rights also belonged to the bankruptcy estate. (*Id.* at p. 72.)

While we agree with the result in *Bostanian* v. *Liberty Savings Bank, supra,* 52 Cal.App.4th 1075, to the extent it may be read, as defendants and the trial court did here, to hold that all causes of action accruing subsequent to the filing of the bankruptcy petition belong to the bankruptcy estate, we disagree. We would limit *Bostanian* to its facts, where the cause of action arose from an asset in the bankruptcy estate.

Here, the causes of action relating to Phillip's termination of employment accrued in November 1995, after the petition was filed. Some of these causes of action are based on the allegation of an oral employment contract. It could be argued such a contract would be an asset of the bankruptcy estate and therefore these causes of action belong to the trustee. However, earnings from personal services are explicitly excluded from the bankruptcy estate. (11 U.S.C. § 541(a)(6).) ▮ "Under the Bankruptcy Act, where an uncompleted contract between the debtor and another was of such a nature as

to be based on personal service or skill, or personal trust or confidence, it was held that the debtor's interest in such contract did not pass to the estate. [Citation.]" (*In re Lamb* (Bankr. D.Vt. 1985) 47 B.R. 79, 82.) Likewise, the cause of action for defamation arose from Phillip Haley's interest in his personal reputation, not an asset of the bankruptcy estate.

All of plaintiffs' causes of action arising from Phillip's termination of employment, whether based on contract or another theory, accrued post petition and are not part of the bankruptcy estate. The same is true of the cause of action alleging Phillip was defamed and Ozella's cause of action for loss of consortium based on Phillip's wrongful termination and defamation. As to these causes of action, the trial court erred in granting the motion for judgment on the pleadings.

## II

 As to the causes of action that accrued before the petition was filed—those arising from Ozella's termination, the false statements about her, and the misrepresentations made to both plaintiffs prior to either's termination—plaintiffs contend the trial court should have allowed them to amend the complaint to substitute the trustee in bankruptcy as party plaintiff. They first contend that the trial court should have granted leave to amend as part of the ruling on the motion for judgment on the pleadings. They next contend the trial court abused its discretion in denying their motion to amend the complaint under Code of Civil Procedure section 473.

 Code of Civil Procedure section 438, subdivision (h)(1) provides the motion for judgment on the pleadings "may be granted with or without leave to file an amended complaint." Code of Civil Procedure section 473, subdivision (a)(1) provides "The court may, in furtherance of justice, and on any terms as may be proper, allow a party to amend any pleading or proceeding by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect; . . . ."

Leave to amend a complaint is thus entrusted to the sound discretion of the trial court. "It is axiomatic that a motion for relief under section 473 is addressed to the sound discretion of the trial court. The exercise of that discretion will not be disturbed on appeal absent a clear showing of abuse. More importantly, the discretion to be exercised is that of the trial court, not that of the reviewing court. Thus, even if the reviewing court might have ruled otherwise in the first instance, the trial court's order will yet not be reversed unless, as a matter of law, it is not supported by the record." (*Martin* v. *Johnson* (1979) 88 Cal.App.3d 595, 604 [151 Cal.Rptr. 816].)

■■■ Plaintiffs contend it is an abuse of discretion to grant a motion for judgment on the pleadings without leave to amend where the pleading does not show on its face that it is incapable of amendment. (*Virginia G.* v. *ABC Unified School Dist.* (1993) 15 Cal.App.4th 1848, 1852 [19 Cal.Rptr.2d 671].) Plaintiffs concede, however, that allowing the trustee in bankruptcy to be substituted "would occur outside of the state statute of limitations."[5] Plaintiffs rely on California's liberal policy in permitting amendments to avoid the harsh result of the statute of limitations. (*Guenter* v. *Lomas & Nettleton Co.* (1983) 140 Cal.App.3d 460, 467 [189 Cal.Rptr. 470].)

In *Klopstock* v. *Superior Court* (1941) 17 Cal.2d 13 [108 P.2d 906, 135 A.L.R. 318], a complaint was amended to substitute the newly appointed administratrix as the real party in interest. The defendant moved to dismiss, contending the amendment was "the institution of an entirely new suit on a different cause of action." (17 Cal.2d at p. 16.) The high court rejected this contention, finding the amendment permissible under the liberal discretion accorded trial courts by Code of Civil Procedure section 473. (17 Cal.2d at p. 21.) The amendment did not constitute a new suit; the defendants were apprised from the filing of the original suit of the facts relied upon and were in no way surprised or prejudiced in their defense. (*Ibid.*) Further, amendments to substitute in a real party in interest have been permitted even after the statute of limitations has run, with the amendment relating back to the original complaint. (*Id.* at pp. 21-22.)

Courts have read *Klopstock* v. *Superior Court, supra,* 17 Cal.2d 13, to construe Code of Civil Procedure section 473 to permit amendment to substitute a plaintiff with standing for one who is not a real party in interest. (*California Air Resources Bd.* v. *Hart* (1993) 21 Cal.App.4th 289, 300 [26 Cal.Rptr.2d 153]; *Powers* v. *Ashton* (1975) 45 Cal.App.3d 783, 790 [119 Cal.Rptr. 729].) For example, in *Jensen* v. *Royal Pools, supra,* 48 Cal.App.3d 717, a condominium owners association brought suit for a defective swimming pool. During the pendency of the action, another case held a condominium owners association lacked standing to sue to recover damages to common areas. The association was allowed to amend the complaint to add individual owners as plaintiffs. The defendants demurred on the basis that the statute of limitations had run. The reviewing court found the demurrer was sustained in error. The amendment related back to the original complaint provided recovery was sought on the same general facts. (*Id.* at p. 720.) Because the basis for relief was the same, there was no prejudice to the

[5]In an analysis of statute of limitations issues prepared by defendant, it appears that the statute of limitations had not run on all of the causes of action accruing before May 3, 1995, when the motion to amend was filed. Nonetheless, plaintiffs have always taken the position that the statute of limitations had run and sought to apply the relation back doctrine.

defendants. (*Id.* at p. 722; see also *California Air Resources Bd.* v. *Hart, supra,* 21 Cal.App.4th 289 [substitution of People of State of California for state agency allowed].)

The trial court chose not to follow *Jensen.* It found the plaintiffs acted in bad faith and chose to follow *Coats* v. *K-Mart Corp., supra,* 215 Cal.App.3d 961. In *Coats,* the plaintiff sought damages on behalf of her deceased son, asserting she was administratrix of his estate. She was not actually appointed administratrix until almost five years later. The defendant moved for a judgment on the pleadings, asserting a statute of limitations defense. The motion was granted. The reviewing court rejected plaintiff's argument that her complaint as administratrix should relate back to the original complaint. Since the plaintiff knew she was not administratrix, but continually asserted she was, the trial court did not abuse its discretion in refusing to apply the relation back doctrine. (*Id.* at p. 968.)

Plaintiffs challenge the trial court's finding that they acted in bad faith. They contend their failure to list the causes of action against defendant as assets in the bankruptcy proceeding does not demonstrate bad faith. Instead, they claim they were ignorant of the viability of those causes of action, as their bankruptcy attorney told them a claim for withheld pay would be difficult to prove and could endanger Phillip's job.

A similar factual situation was recently presented in *Cloud* v. *Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995 [79 Cal.Rptr.2d 544]. In *Cloud,* the plaintiff had been terminated by the defendant. After her termination, she filed for chapter 7 bankruptcy protection. She did not list any claim against her former employee as an asset. While the bankruptcy was pending, she filed a complaint against defendant with the Department of Fair Employment and Housing and then a lawsuit. The defendant moved for judgment on the pleadings, contending plaintiff lacked standing to prosecute the suit. The trial court granted the motion without leave to amend on the grounds that plaintiff lacked standing and she was judicially estopped from pursuing her claim. (*Id.* at p. 1000.)

The appellate court held that under *Klopstock* the plaintiff should have been allowed leave to amend her complaint and the amendment would relate back to the original complaint. (*Cloud* v. *Northrop Grumman Corp., supra,* 67 Cal.App.4th at pp. 1004-1007.) The trial court had found there would be no relation back, relying on *Coats* v. *K-Mart Corp., supra,* 215 Cal.App.3d 961. The *Cloud* court noted that *Coats* did not cite or consider *Klopstock.* Moreover, the plaintiff in *Coats* did not move to amend, so there was no proposed plaintiff with standing. While the unique facts of *Coats* might not

make it wholly inconsistent with *Klopstock,* the *Cloud* court found it was not controlling. (*Cloud, supra,* at pp. 1010-1011.) We agree with *Cloud* that under the liberal amendment policy set forth in *Klopstock* and subsequent cases, plaintiffs should have been allowed to amend their defective pleadings.

Defendants also assert the trial court's action is supported by the doctrine of judicial estoppel. They rely on two California cases—*Billmeyer* v. *Plaza Bank of Commerce* (1995) 42 Cal.App.4th 1086 [50 Cal.Rptr.2d 119], and *Conrad* v. *Bank of America* (1996) 45 Cal.App.4th 133 [53 Cal.Rptr.2d 336]—that apply the *Oneida Motor Freight* rule. That rule provides that the failure to mention a potential claim for lender liability against a creditor in a reorganization plan precludes a later independent action on the lender liability claim. (*Oneida Motor Freight, Inc.* v. *United Jersey Bank* (3d Cir. 1988) 848 F.2d 414, 419.) As this court noted in *Conrad,* the *Oneida Motor Freight* rule "is specific to the circumstances presented, namely, where a chapter 11 debtor fails to list or otherwise identify a claim against a creditor during the proceedings leading up to confirmation of a reorganization plan. [Fn. omitted.]" (*Conrad* v. *Bank of America, supra,* at p. 148.) Plaintiffs focus on the different circumstances here to distinguish those cases.

The Third Circuit, the court that fashioned the *Oneida Motor Freight* rule, addressed the application of judicial estoppel in circumstances more like those here in *Ryan Operations G.P.* v. *Santiam-Midwest Lumber Co.* (3d Cir. 1996) 81 F.3d 355 (*Ryan Operations*). In *Ryan Operations,* the plaintiff constructed homes using wood trim purchased from the defendant. The plaintiff filed for relief under chapter 11, but failed to mention any potential claims based on defective trim. Subsequently, the plaintiff filed suit for damages, alleging the trim was defective. The defendant moved for summary judgment based on judicial estoppel. ■ "Judicial estoppel, sometimes called the 'doctrine against the assertion of inconsistent positions,' is a judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding. . . . [I]t is designed to prevent litigants from 'playing "fast and loose with the courts." ' [Citation.]" (*Id.* at p. 358.) The court found the plaintiff asserted inconsistent positions, but declined to apply judicial estoppel because there was no evidence plaintiff acted in bad faith. "Asserting inconsistent positions does not trigger application of judicial estoppel unless 'intentional self-contradiction is . . . used as a means of obtaining unfair advantage.' [Citation.] Thus, the doctrine of judicial estoppel does not apply 'when the prior position was taken because of a good faith mistake rather than as part of a scheme to mislead the court.' [Citation.] An inconsistent argument sufficient to invoke judicial estoppel must be attributable to

intentional wrongdoing. [Citations.]" (*Id.* at p. 362.) The court found no evidence plaintiff asserted inconsistent positions to obtain an unfair advantage, particularly since its failure to list claims against defendant for defective trim as a potential asset was offset by its failure to list potential claims by homeowners against it as a potential liability. There was no evidence that the failure to list claims affected the reorganization plan. (*Id.* at p. 363.)

In *International Engine Parts, Inc.* v. *Feddersen & Co.* (1998) 64 Cal.App.4th 345 [75 Cal.Rptr.2d 178] (*International Engine Parts*), the court upheld the granting a motion for summary judgment on the grounds of judicial estoppel. The debtor plaintiff had an accounting malpractice claim against its accountant, but failed to disclose this claim in multiple disclosure statements filed with the bankruptcy court, even after it was well aware of the claim. The lawsuit against the accountants was filed the same day as an amended modification of the plaintiff's plan of reorganization, which made no mention of the claim against the accountants. The court found judicial estoppel was appropriate because the plaintiffs "were fully aware of their claim and did not act under ignorance, fraud, or mistake." (*Id.* at p. 353.)

██ As *Ryan Operations, supra,* 81 F.3d 355, and *International Engine Parts, supra,* 64 Cal.App.4th 345, show, whether judicial estoppel should be applied is a factual question. "The determination of the existence of judicial estoppel is a factual finding which will be upheld if supported by substantial evidence. [Citation.]" (64 Cal.App.4th at p. 354.) In *Cloud* v. *Northrop Grumman Corp., supra,* 67 Cal.App.4th 995, the court found it inappropriate to rule on judicial estoppel in a motion for judgment on the pleadings. An evaluation of the facts was necessary and any claim of judicial estoppel should be raised by a motion for summary judgment or at trial. (*Id.* at p. 1020.) While the plaintiff in *Cloud* submitted a declaration explaining her failure to list the claim against the defendant on her bankruptcy petition, it was unclear whether the trial court considered that declaration. (*Id.* at p. 1000.)

Here, the trial court did consider plaintiffs' declarations, that their failure to list their causes of action as assets was due to ignorance, in ruling on the motion to amend. The trial court did not specifically address the issue of judicial estoppel, but did find bad faith. Given the liberal policy permitting amendment, the factual inquiry on a motion to amend is not identical to the factual evaluation for application of judicial estoppel. Nonetheless, defendants contend the undisputed facts show judicial estoppel should be applied as a matter of law. Plaintiffs do not seek the opportunity to present additional facts.

Defendants assert plaintiffs' declarations that they deliberately omitted the claims against defendants from their bankruptcy petition because they

thought the claims were worthless and because they feared Phillip would lose his job, established a bad faith attempt to gain advantage in litigation. On this record, we do not agree. Substantial evidence does not support application of judicial estoppel.

Judicial estoppel should be applied with caution. (*International Engine Parts, supra*, 64 Cal.App.4th at p. 354.) "[J]udicial estoppel is an 'extraordinary remed[y] to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice.' [Citation.]" (*Ryan Operations, supra*, 81 F.3d at p. 365.) This is not such a case. It is not a case like *International Engine Parts* where the plaintiffs repeatedly failed to list the potential action and filed suit on the same day as a modification to the reorganization plan. (*International Engine Parts, supra*, at p. 349.) Rather, plaintiffs' debts were discharged several months before the instant suit was filed. There is no evidence of an intent to play fast and loose with the courts. Instead, the failure to list the claim against defendants was based on legal advice that the claim was worthless.

Moreover, we share the view of the court in *Cloud* that judicial estoppel is rarely appropriate in a chapter 7 context in a case in which the debtor has failed to schedule a claim. (*Cloud* v. *Northrop Grumman Corp., supra*, 67 Cal.App.4th at pp. 1020-1021.) The debtor will lack standing to sue so the suit can be maintained only if the bankruptcy trustee substitutes in or abandons the claim. There is no possibility of unfair advantage because the bankruptcy court will take appropriate actions to promote the goals of bankruptcy and protect the process. (*Id.* at p. 1021.) The trial court's ruling cannot be upheld on the basis of judicial estoppel.

The judgment is reversed. The matter is remanded with instructions to enter an order granting the motion for judgment on the pleadings with leave to amend only as to the causes of action accruing before May 3, 1995. The order shall provide a reasonable time in which plaintiff may secure either the bankruptcy trustee's participation in, or abandonment of, these causes of action. Plaintiffs shall recover their costs on appeal.

Blease, Acting P. J., and Raye, J., concurred.

Respondents' petition for review by the Supreme Court was denied August 18, 1999.