Filed 5/26/22  Mejia v. Bank of America Corp. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARIA J. MEJIA, | B302602 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC503092) |
| v. | |
| BANK OF AMERICA CORPORATION, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert B. Broadbelt, Judge.  Affirmed.

Maria Mejia, in pro. per., for Plaintiff and Appellant.

McGuireWoods, Tanya L. Greene and E. Christine Hehir for Defendants and Respondents.

————————————————

Plaintiff Maria Mejia (Mejia) sued defendants Bank of America, N.A. (Bank of America) and ReconTrust Company, N.A. (ReconTrust) (collectively, defendants) for a variety of claims arising out of the foreclosure and sale of Mejia's residential property. The trial court granted summary judgment for defendants, concluding that Mejia's earlier chapter 7 bankruptcy proceeding transferred the claims from Mejia to her bankruptcy estate by operation of law, and thus Mejia lacked standing to pursue the claims. On appeal, Mejia contends she had standing to sue defendants, the trial court was precluded by our opinion in Mejia's prior appeal from granting summary judgment for defendants, and she should have been permitted to amend her complaint. We conclude summary judgment was properly granted and the trial court did not abuse its discretion in denying leave to amend the complaint. We therefore will affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     Background.

Mejia was the owner of residential real property located at 9951 Wheatland Avenue, Shadow Hills, California (the property). In September 2003, Mejia obtained a mortgage loan from HSBC Mortgage Corporation (HSBC) and executed a promissory note secured by a deed of trust on the property. Mejia obtained an additional loan from LaSalle Bank Midwest, N.A. (LaSalle), which also was secured by a deed of trust. LaSalle subsequently assigned its right in this loan to Bank of America.

Mejia became delinquent on the mortgage loans in March 2010, and ReconTrust recorded a notice of default on or about June 11, 2010.

2

Mejia began the process of seeking a loan modification from Bank of America in August 2010. In December 2010, a Notice of Trustee's Sale was recorded on the property, and on or about December 20, 2010, a Substitution of Trustee and Assignment of Deed of Trust was recorded, reflecting an assignment of the deed of trust from HSBC to BAC Home Loans Servicing, LP. Bank of America purchased the property at a foreclosure sale in March 2011, and Mejia vacated the property sometime in April 2011.[1]

## II. Mejia's bankruptcy action.

Mejia filed a chapter 7 bankruptcy petition in June 2012. (11 U.S.C. § 701 et seq.) Mejia's bankruptcy schedules disclosed the mortgages and foreclosure of the property, but the schedules do not identify any disputes or contingent/unliquidated claims against Bank of America or ReconTrust. Mejia's Statement of Financial Affairs identifies five pending lawsuits, but none are claims against Bank of America or ReconTrust relating to the foreclosure.

Mejia was discharged from bankruptcy on February 4, 2013. Her bankruptcy case was closed on February 22, 2013.

## III. The present action.

Mejia filed the present action in March 2013, and she filed the operative third amended complaint (TAC) in April 2017

---

[1] We are puzzled by Mejia's assertion in her appellant's reply brief that she "disputes that a foreclosure sale took place." Mejia's operative complaint affirmatively alleges that a foreclosure sale took place in March 2011, and many of Mejia's claimed damages are alleged to result from the foreclosure and sale.

against Bank of America Corporation, Bank of America, BAC Home Loans Servicing, LP, and ReconTrust. The TAC alleged as follows:

Beginning in 2009, the City of Los Angeles (City) and the Los Angeles Department of Water and Power (LADWP) shut off water to the property at the direction of developers Patrick Wizmann (Wizmann) and California Home Development, LLC (CHD), who owned adjacent properties. Thereafter, Mejia was involved in litigation against the City, LADWP, Wizmann, and CHD.

In June 2010, Bank of America informed Mejia that she was in default on her loan, and on June 15, 2010, ReconTrust recorded a "Notice of Default and Election to Sell Under Deed of Trust." Mejia contacted Bank of America about the notice of default in August 2010, and in September 2010, a Bank of America employee told Mejia that her foreclosure had been put on hold and no foreclosure sale was pending. In December 2010, the same employee told Mejia that no foreclosure sale date had been set and a loan modification would be completed in three to four months. The same day, however, ReconTrust executed a notice of trustee's sale.

On January 10, 2011, a Bank of America employee told Mejia it was too late to apply for a loan modification, and on March 17, 2011, Bank of America proceeded with the foreclosure sale. Mejia moved out of the property in April 2011. In June 2012, Mejia saw Wizmann occupying the property and inquired whether Bank of America had sold the property to Wizmann, but she did not receive a response.

Mejia "relied on Bank of America's representations and promises . . . that there would be a loan modification in three to

4

four months. . . . In reliance on Bank of America's promises, Mejia gave up the opportunity to obtain other alternatives such as selling [the property], seeking a buyer for the property, raising or borrowing funds from a third party, or taking other steps to secure the [property], among other things."

Based on the foregoing allegations, Mejia alleged four causes of action:

(1)  Negligence (first cause of action):  Defendants owed Mejia a duty to exercise reasonable care in reviewing and processing her loan modification application.  Defendants breached that duty of care by advising her that her loan would be modified and her property would not be foreclosed on, but then proceeding to foreclose on the property.  In breach of their duty of care, defendants either never reviewed Mejia's request for loan modification, foreclosed on the property while reviewing her request, or mishandled her request for a loan modification.

(2)  Intentional fraud and negligent misrepresentation (second and third causes of action):  Between August 2010 and January 2011, Bank of America made false and misleading representations to Mejia, including that defendants did not intend to foreclose on the property and would provide Mejia a loan modification within a few months.  At the time these representations were made, defendants intended to foreclose on the property and did not intend to provide Mejia a loan modification.  "In fact, Defendants had no intention to provide Mejia a loan modification or to refrain from foreclosure at the time they promised her otherwise between August 2010 and January 2011."  Defendants subsequently foreclosed on the property, contrary to their representations in December 2010.

5

(3)     Unfair business practices (fourth cause of action): The practices described above constitute unlawful, unfair, and fraudulent conduct.

## IV.     Bank of America's motion for summary judgment.

Bank of America and ReconTrust moved for summary judgment in June 2019.[2]  Among other things, defendants asserted that the commencement of a chapter 7 bankruptcy extinguishes a debtor's legal rights and interests in litigation and transfers those rights to the bankruptcy trustee.  When a bankruptcy case is closed, any property identified on the bankruptcy schedules but not distributed by the bankruptcy trustee is abandoned to the debtor, but property that is not identified on the bankruptcy schedules remains the property of the bankruptcy estate.  In the present case, Mejia's bankruptcy schedules did not identify her claims against defendants, and thus those claims belonged to the bankruptcy estate, not to Mejia. Mejia therefore lacked standing to assert her claims.

Mejia opposed defendants' motion for summary judgment. She asserted that her causes of action against defendants did not accrue until after her bankruptcy action was closed, and therefore those claims belonged to her, not to the bankruptcy estate.  Mejia further contended her causes of action were not assignable in bankruptcy, and Bank of America was not a proper party to raise the lack-of-standing argument.

---

[2]     Bank of America purported to file its motion for summary judgment (and to appear in this appeal) "for itself and as successor by July 1, 2011 de jure merger to BAC Home Loans Servicing, L.P. (erroneously sued as Bank of America Corporation)."

The trial court granted defendants' motion for summary judgment on September 24, 2019. It explained that as a general matter, upon the filing of a petition for bankruptcy, the debtor's interests in property become the property of the bankruptcy estate. This includes all kinds of property, including causes of action. Thus, " 'any causes of action which accrue to a debtor who has filed for relief under the Bankruptcy Act before the filing of the bankruptcy petition becomes the property of the bankruptcy estate and may thereafter be prosecuted only by the trustee or a duly appointed representative of the estate.' " If a debtor fails to schedule an asset, including a cause of action, that asset belongs to the bankruptcy estate and does not revert to the debtor upon the closing of the bankruptcy case.

The court found that in the present case, Mejia's claims against defendants accrued prior to June 2012, and thus they were part of her bankruptcy estate. The court noted that under California law, a cause of action generally accrues " 'on the date of injury.' " Here, Mejia alleged that defendants' conduct caused her injury when the property was foreclosed on and sold. Because the foreclosure occurred prior to the filing of Mejia's bankruptcy petition, her claims relating to the foreclosure were part of her bankruptcy estate. Mejia therefore lacked standing to assert these claims, and summary judgment was proper.

Judgment was entered on October 28, 2019, and notice of entry of judgment was served on November 4, 2019. Mejia timely appealed.

## DISCUSSION

Mejia contends the trial court erred in granting the motion for summary judgment because there were triable issues as to when her causes of action against defendants accrued and,

7

therefore, whether she had standing to pursue her claims. Mejia further contends she was not judicially estopped from pursuing her claims against defendants, law of the case precluded summary judgment, and leave to amend should have been granted. For the reasons that follow, Mejia's contentions lack merit.

### A. Standard of review.

" 'A defendant's motion for summary judgment should be granted if no triable issue exists as to any material fact and the defendant is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)' (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002–1003 (*Kahn*).) A defendant meets 'his or her burden of showing that a cause of action has no merit if the party has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto.' (Code Civ. Proc., § 437c, subd. (p)(2); see *Szarowicz v. Birenbaum* (2020) 58 Cal.App.5th 146, 162 (*Szarowicz*).)

" 'On appeal from a grant of summary judgment, we review the determination of the trial court de novo.' (*Szarowicz, supra,* 58 Cal.App.5th at p. 162; *Kahn, supra,* 31 Cal.4th at pp. 1002–1003.)" (*Mubanda v. City of Santa Barbara* (2022) 74 Cal.App.5th 256, 261–261.) We review a trial court's decision to deny leave to amend a complaint for an abuse of discretion. (*Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 242; *Levy v. Skywalker Sound* (2003) 108 Cal.App.4th 753, 770.)

### B. Mejia lacks standing to pursue her claims.

#### 1. Bankruptcy principles.

"The filing of a petition in bankruptcy commences the case and creates a bankruptcy estate. (11 U.S.C. § 541(a).) The bankruptcy estate includes all of the debtor's legal and equitable interests in property as of the commencement of the case. (11 U.S.C. § 541(a)(1).)" (*Haley v. Dow Lewis Motors, Inc.* (1999) 72 Cal.App.4th 497, 503–504 (*Haley*).) Thus, "[w]hen a debtor files a chapter 7 petition, two estates are created, a bankruptcy estate and a postpetition estate belonging to the debtor." (*Id.* at p. 504.) The bankruptcy estate contains the debtor's property that existed when the petition was filed, and the postpetition estate contains any property deemed exempt from the chapter 7 estate, postpetition earnings, and property acquired after filing. (*Ibid.*)

"The bankruptcy code . . . places an affirmative duty on debtors to schedule their assets and liabilities with the bankruptcy court." (*Yack v. Washington Mutual, Inc.* (N.D.Cal. 2008) 389 B.R. 91, 95–96, citing 11 U.S.C. § 521(1); *Gottlieb v. Kest* (2006) 141 Cal.App.4th 110, 133 [same].) This includes " 'contingent and unliquidated claims' " as well as " ' "all potential causes of action." ' " (*Gottlieb*, at p. 133, italics omitted.) "[T]he integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets' " (*Hamilton v. State Farm Fire & Cas. Co.* (9th Cir. 2001) 270 F.3d 778, 785, italics omitted) and "the importance of full disclosure in bankruptcy proceedings 'cannot be overemphasized' " (*Ah Quin v. County of Kauai Dept. of Transportation* (9th Cir. 2013) 733 F.3d 267, 273).

The bankruptcy schedule governing personal property "requires a debtor to list 'all personal *property* of the debtor of

9

whatever kind,' including 'contingent and unliquidated *claims* of every nature [and] . . . counterclaims.' [Citation.] 'Property' of a bankruptcy estate includes 'all legal or equitable interests of the debtor in property as of the commencement of the case' and "[a]ny interest in property that the estate acquires after the commencement of the case.' (11 U.S.C. § 541(a)(1), (7).) 'Claim' means a 'right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. . . .' (*Id.*, § 101(5)(A).)" (*Gottlieb*, *supra*, 141 Cal.App.4th 110, 133.)

" '[A]ny causes of action which accrue to a debtor who has filed for relief under the Bankruptcy Act before the filing of the bankruptcy petition become the property of the bankruptcy estate and may thereafter be prosecuted only by the trustee or a duly appointed representative of the estate. [Citations.]' (*Chrysler Credit Corp. v. B.J.M., Jr., Inc.* (E.D.Pa. 1993) 834 F.Supp. 813, 839.)" (*Haley*, *supra*, 72 Cal.App.4th at p. 504; see also *M&M Foods, Inc. v. Pacific American Fish Co.* (2011) 196 Cal.App.4th 554, 561–562 (*M&M Foods*) [commencement of bankruptcy case creates an estate composed of all equitable interests of the debtor, including causes of action; thus, bankruptcy trustee is the only party with standing to prosecute causes of action belonging to the estate].) In contrast, "[w]here events that give rise to a cause of action occur following the filing of the chapter 7 petition, that cause of action is not property of the bankruptcy estate." (*Haley*, at p. 504.)[3]

---

[3] Defendants contend on appeal that claims may become part of the bankruptcy estate even before they accrue under the "fair

10

As a general rule, " '[a]n outstanding legal claim that is abandoned by the trustee reverts back to the original debtor-plaintiff. *See* 11 U.S.C. § 554(a) (directing that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome . . . or that is of inconsequential value and benefit to the estate"); *id.* § 554(c) (directing that "any property scheduled . . . [but] not otherwise administered at the time of the closing of a case is abandoned to the debtor and [considered] administered"). " '[U]pon abandonment . . . the trustee is . . . divested of control of the property because it is no longer part of the estate. . . . Property abandoned under [§] 554 reverts to the debtor.' " ' " (*M&M Foods*, *supra*, 196 Cal.App.4th at p. 563.) However, " '[i]f [the debtor] fail[s] properly to schedule an asset . . . that asset continues to belong to the bankruptcy estate *and* [*does*] *not revert to* [*the debtor*]. *See Stein v. United Artists Corp.*, 691 F.2d 885, 893 (9th Cir. 1982) (holding that only property "administered or listed in the bankruptcy proceedings" reverts to the bankrupt); *accord Hutchins v. IRS*, 67 F.3d 40, 43 (3d Cir. 1995); *Vreugdenhill v. Navistar Int'l Transp. Corp.* 950 F.2d [524], 526 [(8th Cir. 1991)] (holding that property is not abandoned by operation of law unless the debtor "formally schedule[s] the property before the close of the case").' " (*M&M Foods*, *supra*, 196 Cal.App.4th at pp. 563–564, italics added.)

The court applied these principles in *M&M Foods*, *supra*, 196 Cal.App.4th 554, where the plaintiff sued the defendants for conversion of approximately $700,000 in accounts receivable and

---

contemplation" test, a claim that Mejia disputes. Because we conclude that Mejia's claims accrued before she filed for bankruptcy, we need not address this issue.

11

unspecified breaches of an asset purchase agreement. Prior to filing the conversion action, the plaintiff had filed for voluntary chapter 7 bankruptcy, from which it had been discharged. The bankruptcy petition had identified " '[d]ebtor's interest in collections obtained on outstanding accounts receivable from former business activities,' " but had not listed any contingent claims against the defendants. (*Id*. at pp. 557–558.) Under these circumstances, the Court of Appeal concluded that the plaintiff lacked standing to assert its claims against the defendants relating to the accounts receivable and other breaches. The court noted that the plaintiff and the defendants ceased doing business in 2004—well prior to the filing of the bankruptcy petition in 2005—and thus whatever interest the plaintiff had in the accounts receivable passed to and became the property of the bankruptcy estate. (*Id*. at p. 562.) Because the plaintiff had not identified those accounts receivable on its bankruptcy schedules, the right to pursue the accounts receivable remained with the bankruptcy trustee. (*Id*. at p. 564.)

In reaching this conclusion, the court rejected the plaintiff's assertion that it had scheduled the receivables by identifying its " 'interest in collections from accounts receivable from former business activities.' " (*M&M Foods, Inc*., *supra*, 196 Cal.App.4th at p. 563.) The court explained that one purpose of the bankruptcy schedules is to provide the trustee and creditors with a description of personal assets sufficient to allow a determination as to whether and to what extent a given asset has potential value and benefit to the estate. In the case before it, "[t]he listing as phrased by [the plaintiff] provides no indication as to the party responsible for collecting on the accounts or to which 'business activities' the accounts relate." (*Id*. at p. 564.)

12

The accounts receivable therefore were not adequately scheduled and, as such, did not revert to the debtor at the conclusion of the bankruptcy proceeding. (*Ibid.*)

### 2. Accrual.

A cause of action accrues "at the moment when the party alleging injury is entitled to ' " 'begin and prosecute an action thereon.' " ' " (*Pollock v. Tri-Modal Distribution Services, Inc.* (2021) 11 Cal.5th 918, 930–931.) "The general rule for defining the accrual of a cause of action sets the date as the time 'when, under the substantive law, the wrongful act is done,' or the wrongful result occurs, and the consequent 'liability arises.' [Citation.] In other words, it sets the date as the time when the cause of action is complete with all of its elements [citations]— the elements being generically referred to by sets of terms such as 'wrongdoing' or 'wrongful conduct,' 'cause' or 'causation,' and 'harm' or 'injury.' " (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397.)

### 3. Analysis.

In the present case, Mejia's first cause of action for negligence is alleged to arise out of Bank of America's processing of Mejia's loan modification application between September 2010 and March 2011; the second and third causes of action for intentional fraud and negligent misrepresentation are alleged to arise from representations defendants' employees made to Mejia between September 2010 and December 2010; and the fourth cause of action for unfair business practices is alleged to arise out of the conduct "alleged in this Third Amended Complaint." Each cause of action alleges Mejia suffered damages resulting from the loss of the property—i.e., from the sale of the property in March

13

2011, and from being forced to vacate the property in April 2011. Thus, each of Mejia's claims appears to have accrued no later than April 2011, by which time the wrongful conduct allegedly occurred and caused Mejia harm.

Mejia filed for bankruptcy in June 2012. When she did so, each of the accrued claims against defendants passed to and became the property of the bankruptcy estate as a matter of law. (*M&M Foods, Inc.*, *supra*, 196 Cal.App.4th at p. 563.) Because Mejia failed to include these claims on her bankruptcy schedules, they were not abandoned by the trustee and did not revert to Mejia when the bankruptcy case closed in February 2013. Instead, the claims remained the property of the bankruptcy estate, and as a matter of law Mejia lacks standing to pursue them.

Mejia contends that her causes of action did not accrue until after she filed for bankruptcy protection because Bank of America "concealed the fact that it deeded title to her property to [Wizmann/California Home Development] until 3 years after [Bank of America] stated it foreclosed." But the wrongful conduct alleged in the TAC is not the transfer of the property to Wizmann—it is, instead, Bank of America's alleged failure to use due care in processing Mejia's loan application and its allegedly false representations that Mejia's loan would be modified. Bank of America's alleged concealment of its transfer of Mejia's property to Wizmann, therefore, appears wholly irrelevant to the accrual of the causes of action pled in the TAC.

Mejia further contends that her causes of action did not accrue until after she filed for bankruptcy protection because "[d]eciding to file a lawsuit involves a tremendous amount of time, energy, and money, and is not an easy decision to make,

14

particularly in light of the vast litigation with Wizmann and California Home Development LLC." However, Mejia cites no authority—and we are aware of none—for the proposition that a cause of action does not accrue until a party decides to file suit. Indeed, were that the case, no claim could ever be time-barred. That patently is not the law.

Next, Mejia contends that she has standing to pursue this case because she suffered actual harm when she lost title to her home. Her contention misconceives the standing problem present in this case. There is no doubt that Mejia had standing to sue when her claims first accrued in March or April 2011—but as we have said, when plaintiff filed her bankruptcy petition, standing to pursue those claims was transferred to the bankruptcy estate by operation of law. (E.g., *M&M Foods*, *supra*, 196 Cal.App.4th at p. 562 [" 'In the context of bankruptcy proceedings, it is well understood that "a trustee, as the representative of the bankruptcy estate, is the real party in interest, *and is the only party with standing to prosecute causes of action belonging to the estate* once the bankruptcy petition has been filed," ' " italics added]; *Kane v. Nat'l Union Fire Ins. Co.* (5th Cir. 2008) 535 F.3d 380, 385 [same].) And, because Mejia did not properly schedule her claims, the right to pursue the claims remained with the bankruptcy estate even after the bankruptcy case closed.

Finally, Mejia appears to assert that she was not required to schedule her claims against defendants because the bankruptcy "Statement of Financial Affairs" required only that she "[l]ist all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case." Mejia urges that at the time she filed for bankruptcy, she was not (and had not been) a party

15

to a lawsuit with Bank of America, and thus her potential claim against defendants was not relevant to her bankruptcy action. Not so. Although Mejia was not required to identify her claims against defendants on her Statement of Financial Affairs, she *was* required to identify those claims on her asset disclosure schedules. (See, e.g., *M&M Foods*, *supra*, 196 Cal.App.4th at pp. 561–562.) Her failure to have done so is fatal to her right to pursue these claims.[4]

## C. The law of the case doctrine did not preclude the trial court from granting summary judgment.

Mejia asserts that because this court previously found that the first amended complaint adequately alleged the existence of a duty, the law-of-the-case doctrine precluded the trial court from granting summary judgment on the allegations of the TAC that "are consistent with the [first amended complaint]." The claim is without merit. A demurrer and motion for summary judgment are entirely different motions subject to different legal standards, and thus the conclusion in our prior opinion that plaintiff had adequately pled a duty could have no bearing on the trial court's subsequent consideration of the presence or absence of triable issues of material facts. In any event, the trial court's order granting summary judgment was based solely on its conclusion that Mejia lacked standing to bring her claims—an issue not addressed in the prior appeal. Our prior opinion, therefore, was irrelevant to the issues before the court on summary judgment.

---

[4]    Because we have concluded that plaintiff lacked standing to pursue her claims, we do not address the parties' contentions regarding judicial estoppel and unclean hands.

16

(See, e.g., *People v. Ramos* (1997) 15 Cal.4th 1133, 1161 [law of the case applies only to conclusions by Court of Appeal that are necessary to the decision]; *Los Angeles v. Los Angeles Bldg. & Constr. Trades Council* (1949) 94 Cal.App.2d 36 [law of the case applies only when the precise question before the court has been actually decided in the same case in a former appeal].)

### D. The trial court did not abuse its discretion in denying leave to amend the complaint.

Mejia contends, finally, that the trial court abused its discretion by denying her request to amend the complaint. Again, the claims lack merit.

"A trial court has wide discretion to allow the amendment of pleadings, and generally courts will liberally allow amendments at any stage of the proceeding. (*Atkinson v. Elk Corp.* (2003) 109 Cal.App.4th 739, 761.) On a motion for summary judgment ' "[w]here the complaint is challenged and the facts indicate that a plaintiff has a good cause of action which is imperfectly pleaded, the trial court should give the plaintiff an opportunity to amend." ' (*Soderberg v. McKinney* (1996) 44 Cal.App.4th 1760, 1773.) But if the proposed amendment fails to state a cause of action, it is proper to deny leave to amend. (*Oakland Raiders v. National Football League* [(2005)] 131 Cal.App.4th [621,] 652.) [¶] Further, unwarranted delay in seeking leave to amend may be considered by the trial court when ruling on a motion for leave to amend (*Huff v. Wilkins* (2006) 138 Cal.App.4th 732, 746), and appellate courts are less likely to find an abuse of discretion where, for example, the proposed amendment is ' "offered after long unexplained delay . . . or where there is a lack of diligence" ' (*Hulsey v. Koehler* (1990) 218 Cal.App.3d 1150, 1159). Thus, when a plaintiff seeks

leave to amend his or her complaint only after the defendant has mounted a summary judgment motion directed at the allegations of the unamended complaint, even though the plaintiff has been aware of the facts upon which the amendment is based, '[i]t would be patently unfair to allow plaintiffs to defeat [the] summary judgment motion by allowing them to present a "moving target" unbounded by the pleadings.' (*Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 176.)" (*Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1280.)

In the present case, Mejia suggests that she should have been permitted to amend her complaint because "there is a genuine issue of material fact whether [Bank of America] intended to defraud [Mejia] of title to her home by acting in concert with Wizmann and California Home Development LLC." Even were we to agree that Mejia's evidence gave rise to a disputed issue—a conclusion we do not reach—Mejia has not demonstrated either how this issue is relevant to any of the causes of action already pled or how she could amend her complaint to state a valid claim for relief that would survive summary judgment.

Further, Mejia's request to amend her complaint is manifestly untimely. Mejia appears to concede that she knew or could have known the property had been transferred to Wizmann as early as October 2014, when the deed memorializing the transfer was recorded. She nonetheless did not seek to amend her complaint to allege transfer of title to Wizmann until *2019*— and only then in opposition to defendants' motion for summary judgment. Under these circumstances, the trial court did not abuse its discretion by denying Mejia leave to amend.

18

## DISPOSITION

The judgment is affirmed.  Respondents are awarded their appellate costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

LAVIN, J.

KIM, J.*

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

19