Filed 5/2/16  Peterson v. California Reconveyance Co. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MARK PETERSON, | H041356 |
| Plaintiff and Appellant, | (Santa Cruz County Super. Ct. No. CV165101) |
| v. | |
| CALIFORNIA RECONVEYANCE COMPANY et al., | |
| Defendants and Respondents. | |

## I.  INTRODUCTION

Appellant Mark Peterson owned property in Capitola that was commonly known and addressed as 206 Hollister Avenue 1, 2 and 3.  The deed of trust for the adjacent property owned by Greg R. Flowers stated that the address for Flowers' property was "206 Hollister Avenue 1."  When Flowers defaulted on his loan, respondents California Reconveyance Company (California Reconveyance) and JP Morgan Chase Bank (Chase) posted the foreclosure notices for Flowers' property on Peterson's adjacent property.  The foreclosure notices stated that the address for the property to be foreclosed upon was "206 Hollister Avenue 1," but included the correct legal description and assessor's parcel number for Flowers' property.

Peterson brought the instant action against California Reconveyance and Chase to quiet title and for injunctive and declaratory relief.  Peterson also alleged that defendants were liable for negligence and slander of title.  The trial court granted defendants' motion

for summary judgment on the grounds that Peterson lacked standing to bring this action and each cause of action lacked merit as a matter of law.

For the reasons stated below, we determine that Peterson has standing and summary adjudication of the causes of action for negligence and slander of title should be denied. We will therefore reverse the judgment and direct the trial court to enter new orders denying summary adjudication of those causes of action.

## II. FACTUAL BACKGROUND

Our factual summary is drawn from the parties' separate statements of fact and the evidence they submitted in connection with the motion for summary judgment.

### A. *The Foreclosure Notices*

In 2006, Peterson owned property in Capitola commonly known as 206 Hollister Avenue. At that time, Peterson's property included three cottages commonly known and addressed as 206 Hollister Avenue 1, 2 and 3. The recorded description of the property is "**Lot 7 in Block X**, as shown upon that certain Map entitled, 'Capitola', filed for record in the Office of the County Recorder of Capitola City, County of Santa Cruz, State of California, on April 26, 1888 in Map Book 10, Page 13, Santa Cruz County Records." (Boldface added.)

In 2007, the property adjacent to Peterson's property was owned by Flowers. The deed of trust recorded on July 31, 2007, indicates that Flowers refinanced the property with a loan from Washington Mutual Bank and states that the property's address is "206 Hollister Avenue 1." The deed of trust also contains the following legal description of the property: "**Lot 5, in Block X**, as shown upon that certain map entitled, 'Capitola', filed for record in the office of the County Recorder on April 26, 1888, in Map Book 10, page 13, Santa Cruz County records." (Boldface added.)

A notice of default and election to sell under deed of trust was recorded on Flowers' property by California Reconveyance on May 12, 2009. The notice of default stated that Flowers had defaulted on his loan from Washington Mutual Bank that was

2

secured by a deed of trust on property described as "206 Hollister Avenue 1, Capitola, CA 95010." On August 18, 2009, California Reconveyance recorded a notice of trustee's sale, which stated that the street address of the property to be sold was "206 Hollister Avenue 1, Capitola, CA 95010" and the legal description was "Lot 5, in Block X, as shown upon that certain map entitled, 'Capitola', filed for record in the office of the County Recorder on April 26, 1888, in Map Book 10, page 13, Santa Cruz County Records."

Sometime during the summer of 2009, the foreclosure notices for Flowers' property, which stated a street address of 206 Hollister Avenue 1, were physically posted on Peterson's adjacent property. One of the cottages on Peterson's property had a commonly known street address of 206 Hollister Avenue 1. The foreclosure notices for Flowers' property were again physically posted on Peterson's property in August 2012.

Flowers' property and Peterson's property had slightly different assessor's parcel numbers, as shown in the City of Capitola's records. The assessor's parcel number for Peterson's property is 036-125-09. The assessor's parcel number for Flowers' property is 036-125-10.

On December 13, 2012, Mark Wheeler, the City of Capitola's building official, sent an email advising the relevant government agencies that the two properties had different street addresses. Wheeler stated that the street address for the property with assessor's parcel number 036-125-09 (Peterson's property) was 204 Hollister Avenue, and the address for the property with assessor's parcel number 036-125-10 (Flowers' property) was 206 Hollister Avenue.

**B.** *Peterson's Bankruptcy Proceedings*

On October 11, 2007, Peterson filed a Chapter 13 bankruptcy petition. Peterson's Chapter 13 bankruptcy proceeding was converted to a Chapter 7 bankruptcy proceeding on March 12, 2010. Peterson filed his first amended schedules A and B in his Chapter 7

3

bankruptcy proceeding on May 25, 2010.[1] The first amended schedules did not list the instant lawsuit, which was filed in 2009, as an asset.

In June 2010 an order was filed in Peterson's Chapter 7 bankruptcy proceeding confirming the bankruptcy trustee's abandonment of "affirmative claims asserted by the Debtor or that may be asserted by the Debtor or his estate against any party associated with a loan secured by a deed of trust on 206 Hollister Avenue, Capitola, California, in favor of New Century Mortgage Corporation, Deutsche Bank National Trust Company, and Carrington Mortgage Services, LLC [Peterson's lenders]." The order did not mention the instant lawsuit or any claim that Peterson might have against Flowers' lenders arising from their posting of the foreclosure notices for Flowers' property on Peterson's adjacent property in 2009.

A settlement agreement and mutual release was filed in Peterson's Chapter 7 bankruptcy proceeding on September 5, 2012. The settlement agreement states that Peterson was in default under the deed of trust recorded on property he owned "commonly known as 206 Hollister Ave., Capitola, California" that had a legal description of "Lot 7, in Block X, as shown upon that certain map entitled 'Capitola', filed for record in the Office of the County Recorder of Capitola City, County of Santa Cruz, State of California, on April 26, 1888, in Map Book 10, Page 13, Santa Cruz County Records."

Under the settlement agreement, the claim made against Peterson's bankruptcy estate by Carrington Mortgage Services LLC, for payment in full of all amounts due under Peterson's promissory note, was to be withdrawn upon the conveyance of the property commonly known as 206 Hollister Avenue to Hollister Holdings I, LLC

---

[1] "In a bankruptcy proceeding, the 'bankruptcy code place[s] an affirmative duty on [the debtor] to schedule his [or her] assets and liabilities. [11 U.S.C.] § 521(1).' " (*M & M Foods, Inc. v. Pacific American Fish Co., Inc.* (2011) 196 Cal.App.4th 554, 563 (*M & M Foods*).)

(Hollister Holdings) and upon specified payments to Deutsche Bank, among others. The lenders who financed Hollister Holdings' $700,000 purchase of Peterson's property from his bankruptcy estate obtained a preliminary title report, which did not reference any of the recorded documents pertaining to the foreclosure of Flowers' property.

Hollister Holdings recorded the grant deed for the property commonly known as "206 Hollister Avenue, Units 1, 2 & 3, Capitola, CA 95010" on September 28, 2012. The grant deed states that the Chapter 7 trustee for Peterson's bankruptcy estate transferred all rights, title, and interest in 206 Hollister Avenue, Units 1, 2, and 3, to Hollister Holdings.

On December 7, 2012, Peterson was dismissed from the Chapter 7 bankruptcy proceedings. In 2014, Peterson purchased the property commonly known as "206 Hollister Avenue, Units 1, 2 & 3" from Hollister Holdings, as shown by the grant deed recorded on May 20, 2014.

### III. PROCEDURAL BACKGROUND

#### A. *The Complaint*

The operative complaint is the second amended complaint (the complaint). The causes of action asserted against defendants California Reconveyance and Chase include declaratory relief, injunctive relief, negligence, slander of title, and quiet title.

In the cause of action for declaratory relief, Peterson sought declarations that the deed of trust securing Flowers' property did not secure Peterson's property at 206 Hollister Avenue 1 and that Chase could not foreclose on Peterson's property. Peterson also sought to enjoin the foreclosure sale under the deed of trust that had been scheduled for September 15, 2009.

In the negligence cause of action, Peterson alleged that defendants had carelessly drafted the deed of trust for Flowers' property with an erroneous street address of 206 Hollister Avenue 1 and had posted the notice of trustee's sale and notice of default on the wrong property.

5

The cause of action for slander of title alleged that defendants had recklessly recorded both an erroneous notice of default and an erroneous notice of trustee's sale on Peterson's property, which was defamatory since neither Washington Mutual nor Chase was the lender for Peterson's Hollister Avenue property. Peterson sought to quiet his title in 206 Hollister Avenue 1 because one or more of defendants had claimed an adverse interest.

## B. *The Motion for Summary Judgment*

Defendants filed a "renewed" motion for summary judgment, or, in the alternative, summary adjudication in March 2014. Defendants acknowledged that their previous motion for summary judgment was denied in 2012, but asserted that a renewed motion was proper under Code of Civil Procedure section 437c, subdivision (f)(2)[2] due to newly discovered evidence.

The newly discovered evidence, according to defendants, was found in the records of the City of Capitola and the County of Santa Cruz, which currently showed that the street address used in the Flowers' deed of trust—206 Hollister Avenue—was the "official and legal street address" for Flowers' property. Defendants also asserted that there was new evidence showing that the documents recorded in connection with Flowers' loan had no effect on the loan obtained by Hollister Holdings to purchase Peterson's property from his bankruptcy estate.

On the merits, defendants contended that summary judgment should be granted because Peterson lacked standing, for two reasons. First, defendants argued that since Peterson had not listed the five causes of action in the instant lawsuit as an asset in his bankruptcy schedules, and the bankruptcy trustee had not abandoned the claims, under bankruptcy law only the trustee had standing to prosecute those causes of action. Second,

---

[2] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

6

defendants argued that Peterson lacked standing because title to the property had been transferred from him to Hollister Holdings during bankruptcy proceedings in September 2012.

Alternatively, defendants argued that each cause of action lacked merit. The cause of action for declaratory relief could not lie, defendants asserted, because it was undisputed that the Flowers' deed of trust included the correct legal address and parcel number for Flowers' property, and therefore the Flowers' deed of trust was sufficient to describe the Flowers' property to the exclusion of Peterson's property.

As to the cause of action for negligence, defendants maintained that they owed no duty to Peterson since he was not a borrower on Flowers' loan. Defendants also argued that they were not negligent because the Flowers' deed of trust contained the correct legal address and parcel number for Flowers' property.

Similarly, defendants argued that the cause of action for slander of title failed because the Flowers' deed of trust did not constitute a false publication, since the deed of trust included the correct legal description for Flowers' property and did not impact the decision of the lenders who had financed Hollister Holdings' purchase of Peterson's property.

The cause of action for quiet title lacked merit, according to defendants, because Peterson no longer had title to the property once it was transferred to Hollister Holdings. Finally, defendants argued that the cause of action for injunctive relief failed because there was no viable cause of action to support it.

**C.** *Opposition to Motion for Summary Judgment*

Peterson opposed the motion for summary judgment/adjudication on the primary ground that the addresses for Flowers' property and Peterson's property are in dispute. According to Peterson, the evidence showed that everyone, including City of Capitola building official Wheeler, believed that the correct address for Peterson's property was

7

206 Hollister Avenue, Units 1, 2, and 3, until Wheeler changed his mind and determined in December 2012 that the address was 204 Hollister Avenue.

As to his standing to bring the instant action, Peterson argued that he had standing as the current owner of the property and because he had been the functional owner as Hollister Holdings' sole member. Peterson also argued that his bankruptcy proceedings did not affect his standing, since he had no obligation to list on his bankruptcy schedules claims that accrued after his bankruptcy petition was filed. Peterson asserted that he filed his bankruptcy petition in 2007, long before defendants recorded and posted erroneous foreclosure notices on his property in 2009 and 2012. He also asserted that he had been dismissed from his bankruptcy case and therefore he was in the same position as if he had never filed a bankruptcy petition.

Regarding the merits, Peterson contended that the cause of action for slander had merit, even if the addresses for the two properties were different. Peterson explained that the physical posting on his property of the foreclosure notices for Flowers' property disparaged his property, thereby harming his ability to sell it. He further explained that the slander of title cause of action had merit because "anything that publicizes to the neighbor hood [*sic*] and general public that Defendants have the ability, and in fact are moving to foreclose, is false."

Finally, Peterson argued that the motion for summary judgment should be denied because defendants had not shown that the evidence they claimed to be newly discovered was not available before their first motion for summary judgment was filed in 2012.

**D.** *Trial Court Order*

The trial court granted the motion for summary judgment in its June 30, 2014 order. The court also issued several orders on defendants' objections to Peterson's evidence.[3] A judgment in defendants' favor was entered on July 2, 2014.

The June 30, 2014 order included the trial court's reasons for granting summary judgment. As a threshold matter, the court found that there were newly discovered facts or circumstances that justified the reassertion of defendant's motion for summary judgment, consisting of the government records showing that "the street address set forth by Defendants in the subject Deed of Trust and related foreclosure documents is the official and . . . commonly used address for the subject Property. This new fact is material to the renewed motion."

With regard to the merits, the trial court found that the undisputed material facts showed that Peterson lacked standing because he had not disclosed in his bankruptcy proceedings the five causes of action that he was asserting against defendants, and therefore only the Chapter 7 bankruptcy trustee had standing to prosecute the causes of action. The court also found that Peterson lacked standing because he was not the real party in interest, since Hollister Holdings owned the subject property when the second amended complaint was filed.

The trial court further determined that even if Peterson had standing, there was no triable issue of material fact as to any cause of action. The court found that the testimony of Wheeler was conclusive as to the official street addresses for the properties at issue. Pursuant to Wheeler's testimony, the official address for the property owned by Peterson/Hollister Holdings is 204 Hollister Avenue and the official address for Flowers' property is 206 Hollister Avenue. In addition, the court ruled that "[e]ven if the common

---

[3] The trial court's rulings on defendants' objections to Peterson's evidence have not been challenged on appeal.

9

address was wrong, the property secured, the deed of trust and all foreclosure documents also have a different legal descriptions and APN[4] from those of the Peterson/Hollister Holdings property."

## IV. DISCUSSION

On appeal, Peterson contends that the summary judgment should be reversed because the trial court erred in finding that he lacked standing and that Wheeler's testimony regarding the addresses of the subject properties barred his claims against defendants. Peterson does not raise any issue as to the propriety of the renewed summary judgment motion under section 437c, subdivision (f)(2). We will begin our evaluation with the standard of review for an order granting summary judgment.

### A. *The Standard of Review*

The standard of review for an order granting a motion for summary judgment is de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 (*Aguilar*).) The trial court's stated reasons for granting summary judgment are not binding on the reviewing court, "which reviews the trial court's ruling, not its rationale. [Citation.]" (*Ramalingam v. Thompson* (2007) 151 Cal.App.4th 491, 498.)

In performing our independent review, we apply the same three-step process as the trial court. "Because summary judgment is defined by the material allegations in the pleadings, we first look to the pleadings to identify the elements of the causes of action for which relief is sought." (*Baptist v. Robinson* (2006) 143 Cal.App.4th 151, 159 (*Baptist*).)

"We then examine the moving party's motion, including the evidence offered in support of the motion." (*Baptist*, *supra*, 143 Cal.App.4th at p. 159.) A defendant moving for summary judgment has the initial burden of showing that a cause of action lacks merit

---

**4** " 'APN'—which stands for assessor's parcel number—is a numerical identifier associated with a particular piece of property for property tax assessment purposes." (*Cafferkey v. City and County of San Francisco* (2015) 236 Cal.App.4th 858, 861.)

10

because one or more elements of the cause of action cannot be established or there is a complete defense to that cause of action. (§ 437c, subd. (o); *Aguilar, supra*, 25 Cal.4th at p. 850.)

If the defendant fails to make this initial showing, it is unnecessary to examine the plaintiff's opposing evidence and the motion must be denied. However, if the moving papers make a prima facie showing that justifies a judgment in the defendant's favor, the burden shifts to the plaintiff to make a prima facie showing of the existence of a triable issue of material fact. (§ 437c, subd. (p)(2); *Aguilar, supra*, 25 Cal.4th at p. 849.)

In determining whether the parties have met their respective burdens, "the court must 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom [citation], and must view such evidence [citations] and such inferences [citations], in the light most favorable to the opposing party." (*Aguilar, supra*, 25 Cal.4th at p. 843.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id.* at p. 850, fn. omitted.) Thus, a party " 'cannot avoid summary judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact. [Citation.]' [Citation.]" (*Dollinger DeAnza Associates v. Chicago Title Ins. Co.* (2011) 199 Cal.App.4th 1132, 1144-1145.)

Keeping the standard of review in mind, we will independently determine whether the motion for summary judgment should have been granted, beginning with the issue of standing.

**B.** *Standing*

### 1. Bankruptcy

Peterson contends that the trial court erred in determining that he lacks standing because he failed to list his claims in the instant lawsuit as assets on his bankruptcy schedules. He argues that under federal bankruptcy law, the conversion of a bankruptcy

11

proceeding from Chapter 13 to Chapter 7 results in the Chapter 7 bankruptcy estate including only the property that existed at the time the Chapter 13 bankruptcy petition was filed. Peterson maintains that since he filed his Chapter 13 bankruptcy petition in 2007, his causes of action arising from the 2009 and 2012 wrongful posting of foreclosure notices are postpetition claims that were not assets of his Chapter 7 bankruptcy estate, and therefore he had no obligation to list them in his 2010 bankruptcy schedules. Alternatively, Peterson contends that the dismissal of his Chapter 7 bankruptcy case in December 2012 resulted in the revesting in him of all bankruptcy estate assets, included his claims against defendants, pursuant to 11 U.S.C. section 349, subdivision (b)(3).

We requested and received supplemental briefing from the parties on this standing issue. As we will discuss, we agree with Peterson that under the pertinent federal statutes governing bankruptcy, his bankruptcy proceedings did not cause him to lack standing to bring the instant action.

"As a general matter, upon the filing of a petition for bankruptcy, 'all legal or equitable interests of the debtor in property' become the property of the bankruptcy estate and will be distributed to the debtor's creditors. [11 U.S.C.] § 541(a)(1)." (*Rousey v. Jacoway* (2005) 544 U.S. 320, 325.) "The scope of section 541 is broad and 'property' includes causes of action. [Citation.]" (*Haley v. Dow Lewis Motors, Inc.* (1999) 72 Cal.App.4th 497, 504 (*Haley*).)

In *Harris v. Viegelahn* (2015) __ U.S. __ [135 S.Ct. 1829] (*Harris*), the United States Supreme Court discussed the differences between Chapter 13 and Chapter 7 bankruptcy estates. "Chapter 7 allows a debtor to make a clean break from his [or her] financial past, but at a steep price: prompt liquidation of the debtor's assets. When a debtor files a Chapter 7 petition, his [or her] assets, with specified exemptions, are immediately transferred to a bankruptcy estate. [11 U.S.C.] § 541(a)(1). . . . [W]hile a Chapter 7 debtor must forfeit virtually all his [or her] prepetition property, he [or she] is

12

able to make a 'fresh start' by shielding from creditors his [or her] postpetition earnings and acquisitions." (*Harris*, *supra*, at p. __ [135 S.Ct. at p. 1835].)

"Chapter 13 works differently. A wholly voluntary alternative to Chapter 7, Chapter 13 allows a debtor to retain his [or her] property if he [or she] proposes, and gains court confirmation of, a plan to repay his [or her] debts over a three- to five-year period. [11 U.S.C.] § 1306(b), § 1322, § 1327(b). Payments under a Chapter 13 plan are usually made from a debtor's 'future earnings or other future income.' [11 U.S.C.] § 1322(a)(1); [citation]. Accordingly, the Chapter 13 estate from which creditors may be paid includes both the debtor's property at the time of his [or her] bankruptcy petition, and any wages and property acquired after filing. [11 U.S.C.] § 1306(a)." (*Harris*, *supra*, __ U.S. at p. __ [135 S.Ct. at p. 1835].)

"Conversion from Chapter 13 to Chapter 7 does not commence a new bankruptcy case. The existing case continues along another track, Chapter 7 instead of Chapter 13, without 'effect[ing] a change in the date of the filing of the petition.' [11 U.S.C.] §348(a)." (*Harris*, *supra*, __ U.S. at p. __ [135 S.Ct. at p. 1836].) Absent a bad faith conversion, 11 U.S.C. § 348, subdivision (f)(1)(A) provides that "in a case converted from Chapter 13, a debtor's postpetition earnings and acquisitions do not become part of the new Chapter 7 estate: [¶] " '[P]roperty of the [Chapter 7] estate in the converted case shall consist of property of the estate, as of the date of filing of the [initial Chapter 13] petition, that remains in the possession of or is under the control of the debtor on the date of conversion.' " (*Harris*, *supra*, at p. __ [135 S.Ct. at p. 1837].)

Regarding causes of action, the general rule is that "[w]here events that give rise to a cause of action occur following the filing of the chapter 7 petition, that cause of action is not property of the bankruptcy estate. [Citations.]" (*Haley*, *supra*, 72 Cal.App.4th 497 at p. 504.) One exception is that a cause of action that arises postpetition from the property of the bankruptcy estate is also considered property of the Chapter 7 bankruptcy estate. (See 11 U.S.C. § 541, subd. (a)(6); *Bostanian v. Liberty*

13

*Savings Bank* (1997) 52 Cal.App.4th 1075, 1084 (*Bostanian*); *Haley*, *supra*, at p. 505.) This is because the bankruptcy estate's property also includes "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, . . . ." (11 U.S.C. § 541, subd. (a)(6); *Bostanian*, *supra*, at p. 1084.) A foreclosure action is considered "a product, proceed, or offspring" of the debtor's interest in his or her residence and is therefore property of the bankruptcy estate. (*Bostanian*, s*upra*, at p. 1084; accord, *Haley*, *supra*, at p. 505.) Only the bankruptcy trustee has standing to prosecute a cause of action that is the property of the bankruptcy estate. (*Bostanian*, *supra*, at p. 1081.)

Another rule governing bankruptcy proceedings is that the " 'bankruptcy code place[s] an affirmative duty on [the debtor] to schedule his [or her] assets and liabilities. [11 U.S.C.] § 521(1). If he [or she] fail[s] properly to schedule an asset, including a cause of action, that asset continues to belong to the bankruptcy estate and [does] not revert to [the debtor]. [Citations.]" (*M & M Foods, supra,* 196 Cal.App.4th at p. 563; but see *Wallick v. Period Homes* (Ga.Ct.App. 2001) 555 S.E.2d 863, 866 [no authority requires scheduling product or proceeds of bankruptcy estate property as an asset of Chapter 7 estate].) Thus, "absent abandonment of the claim by the [bankruptcy] trustee, a debtor out of possession has no standing to prosecute a cause of action which has passed to the bankruptcy estate." (*Bostanian*, *supra*, 52 Cal.App.4th at p. 1081.)

Since Peterson's causes of action in the present case arose from his interest in real property—the cottages on Hollister Avenue—that was property of the bankruptcy estate, his causes of action were also property of his bankruptcy estate pursuant to federal bankruptcy law. (See 11 U.S.C. § 541, subd. (a)(6); *Bostanian*, *supra*, 52 Cal.App.4th at p. 1084; *Haley*, *supra*, 72 Cal.App.4th at p. 505.) Although Peterson did not list the causes of action as assets in his bankruptcy schedules and the trustee did not abandon the claims, we agree with Peterson that the causes of action nevertheless reverted to him because his bankruptcy case was dismissed, rather than closed.

14

The difference between closing and dismissing a bankruptcy case was discussed in *Menk v. Lapaglia (In re Menk)* (Bankr. 9th Cir. 1999) 241 B.R. 896 (*Menk*). "A bankruptcy case is closed after the estate is fully administered and the court has discharged the case trustee. 11 U.S.C. § 350(a); [citation]." (*Id.* at p. 911.) If there is property remaining in the bankruptcy estate that was not scheduled and administered, the property "retains its status as 'property of the estate' after closing. 11 U.S.C. § 554(d)." (*Ibid.*)

"By way of contrast, dismissing a bankruptcy case has different and more significant consequences than closing a case." (*Menk*, *supra*, 241 B.R. at p. 912; see 11 U.S.C. § 349 [prescribing the effect of a dismissal].) "A dismissal, unless otherwise ordered, 'revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.' (11 U.S.C. § 349(b)(3).)[5] This provision 'obviously contemplates that on dismissal a bankrupt is reinvested with the estate, subject to all encumbrances which existed prior to the bankruptcy. After an order of dismissal, the debtor's debts and property are subject to the general laws, unaffected by bankruptcy concepts.' [Citation.] ' "The basic purpose of [11 U.S.C. § 349, subd. (b)(3)] is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." ' [Citations.]" (*Circle Star Center Associates, L.P. v. Liberate Technologies* (2007) 147 Cal.App.4th 1203, 1209, italics & fn. omitted.)

Therefore, "[u]nlike closing, . . . all property of the [bankruptcy] estate revests in the entity in which such property was vested immediately before bankruptcy, regardless of whether the property was scheduled. [Citation.]" (*Menk*, *supra*, 241 B.R. at p. 912;

---

[5] 11 U.S.C. § 349, subdivision (b)(3) provides: "Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title [11 USCS § 742]-- [¶] . . . [¶] revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title."

15

accord, *Crawford v. Franklin Credit Management Corp.* (2d Cir. 2014) 758 F.3d 473, 484-485 (*Crawford*); *Mackall v. JPMorgan Chase Bank, N.A.* (Colo.Ct.App. 2014) 356 P.3d 946, 950-951; *Norris v Brookshire Grocery Co.* (Tex.Ct.App. 2012) 362 S.W.3d 226, 231-232; but see *Kunica v. St. Jean Financial, Inc.* (U.S.D.C. 1999) 233 B.R. 46, 53-55 [discharge of bankruptcy case not prerequisite for finding debtor lacks standing to assert undisclosed claims post-bankruptcy].)

Since the record reflects that Peterson's Chapter 7 bankruptcy case was dismissed on December 7, 2012, the causes of action arising from his Hollister Avenue property that were the property of the bankruptcy estate revested in Peterson by operation of law, pursuant to 11 U.S.C. § 349, subdivision (b)(3), even though the causes of action were not scheduled by Peterson and were not administered or abandoned by the bankruptcy trustee. (See *Crawford*, *supra*, 758 F.3d at pp. 484-485.) Accordingly, Peterson's bankruptcy proceedings did not cause him to lack standing to bring the causes of action asserted in the present case.

The decisions on which defendants rely for a contrary result are distinguishable and do not aid defendants. In *Gottlieb v. Kest* (2006) 141 Cal.App.4th 110, the appellate court determined that a company was obligated to disclose its legal claims in its Chapter 11 (11 U.S.C. § 1101 et seq.) bankruptcy case. (*Id.* at p. 136.) However, the appellate court further determined that the debtor's nondisclosure of its legal claims did not bar a post-bankruptcy action asserting those claims. (*Id.* at pp. 120, 140-141.)

The *M & M Foods* decision, on which defendants also rely, involved a company's Chapter 7 bankruptcy. (*M & M Foods*, *supra*, 196 Cal.App.4th at p. 557.) The appellate court stated that " ' "[g]enerally speaking, a pre-petition cause of action is the property of the Chapter 7 bankruptcy estate, and only the trustee in bankruptcy has standing to pursue it." [Citations.]' " (*Id* at p. 562, italics omitted.) The court also determined that where a debtor fails to properly schedule a cause of action during bankruptcy proceedings, the cause of action continues to belong to the bankruptcy estate and does not revert to the

16

debtor when the bankruptcy case is closed. (*Id*. at pp. 563-564.) Since the plaintiff, M & M Foods, Inc., had not disclosed its prepetition claim against the defendant in its bankruptcy disclosure schedules, and the claim was not abandoned by the bankruptcy trustee, the appellate court ruled that M & M Foods, Inc. did not have standing to arbitrate the claim. (*Id.* at p. 564.) The decision in *M & M Foods* has no application in the present case since M & M Foods' bankruptcy case was closed, not dismissed. (*Id.* at p. 558.)

The decision in *Bostanian* is also procedurally distinguishable, since in that case the plaintiffs' Chapter 7 bankruptcy proceeding was pending and had not been either closed or dismissed. (*Bostanian*, *supra*, 52 Cal.App.4th at pp. 1077-1079.) The *Bostanian* court concluded that "plaintiffs' [wrongful foreclosure] cause of action is property of the bankruptcy estate. Further, there is no evidence the chapter 7 trustee has abandoned the interest in this claim. Absent abandonment, plaintiffs have no standing to pursue this appeal; the chapter 7 trustee is the real party in interest with standing to sue." (*Id*. at p. 1087.)

For these reasons, we find no merit in defendants' contention that Peterson's bankruptcy proceedings caused him to lack standing to bring the instant action.

### 2. Ownership

Peterson also contends that the trial court erred in determining that he lacked standing because he did not own the subject property at the time he filed his second amended complaint in 2013. Since Peterson owned the property when defendants posted the foreclosure notices in 2009 and 2012, Peterson argues that he has standing to bring the instant lawsuit. We agree.

Section 367 provides the general rule regarding standing: "Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute." "[T]he real party in interest is the party who has title to the cause of action, i.e.,

17

the one who has the right to maintain the cause of action. [Citation.]" (*Vaughn v. Dame Construction Co.* (1990) 223 Cal.App.3d 144, 147 (*Vaughn*).)

"While ordinarily the owner of the real property is the party entitled to recover for injury to the property, the essential element of the cause of action is injury to one's interests in the property—ownership of the property is not. It has been recognized in many instances that one who is not the owner of the property nonetheless may be the real party in interest if that person's interests in the property are injured or damaged. [Citations.]" (*Vaughn*, *supra*, 223 Cal.App.3d at p. 148.)

In other words, " '[t]he *cause of action* for damages as a result of injury to property, which was fully vested in plaintiff at the time of the injury, is personal property—not real property.' " (*Keru Investments, Inc. v. Cube Co.* (1998) 63 Cal.App.4th 1412, 1424.) For that reason, the transfer of title to property does not transfer the prior owner's cause of action arising from damage to the property to the new owner. (*Thoryk v. San Diego Gas & Electric Co.* (2014) 225 Cal.App.4th 386, 395.) In this case, since the record reflects that the foreclosure notices for Flowers' property were erroneously posted on Peterson's property during the summer of 2009 and in August 2012, prior to the transfer of title to Hollister Holdings in September 2012, the causes of action arising from the erroneous posting were vested in Peterson and he has standing to prosecute them.

Having determined that Peterson has standing, we turn to his contention that the trial court erred in granting summary adjudication of each of his five causes of action.

### C. Declaratory Relief

In his cause of action for declaratory relief, Peterson states that he "desire[s] a judicial determination of the right and responsibilities of the parties, specifically a determination that the Deed of Trust does not secure 206 Hollister Avenue 1 and Chase cannot foreclose on 206 Hollister Avenue 1."

18

On appeal, Peterson argues that even assuming that the official address for his property is 204 Hollister Avenue, as testified by City of Capitola building official Wheeler, he "still can claim that he is entitled to declaratory relief—a declaration that the Flowers-WaMu deed of trust is void." Defendants respond that the cause of action lacks merit as a matter of law because it is undisputed that the correct address for the Flowers' property is 206 Hollister Avenue pursuant to Wheeler's official act as the City of Capitola building official.

We determine that the undisputed material facts show that Peterson is not entitled to the declaratory relief he seeks. "Code of Civil Procedure section 1060 authorizes '[a]ny person . . . who desires a declaration of his or her rights or duties with respect to another . . . in cases of *actual controversy relating to the legal rights and duties of the respective parties,* [to] bring an original action . . . for a declaration of his or her rights and duties . . . .' (. . . § 1060, italics added.)" (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 513 (*Jenkins*), disapproved on another ground in *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 939, fn. 13; see also *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 909.)

Thus, "[t]he purpose of a judicial declaration of rights in advance of an actual tortious incident is to enable the parties to shape their conduct so as to avoid a breach." (*Babb v. Superior Court* (1971) 3 Cal.3d 841, 848 (*Babb*).) Declaratory relief is therefore a remedy that " 'operates *prospectively*, and not merely for the redress of past wrongs. It serves to set controversies at rest before they lead to repudiation of obligations, invasion of rights or commission of wrongs; in short, the remedy is to be used in the interests of preventive justice, to declare rights rather than execute them.' " (*Ibid.*, italics added.)

Peterson argues in his reply brief that he properly seeks "a declaration that Defendants cannot foreclose on his property." However, it is undisputed that the 2009 and 2012 foreclosure notices that were posted on Peterson's property contained the correct legal description for Flowers' property ("Lot 5, in Block X, as shown upon that

19

certain map entitled, 'Capitola', filed for record in the office of the County Recorder on April 26, 1888, in Map Book 10, page 13, Santa Cruz County Records") and the correct county assessor's parcel number for Flowers' property (036-125-10). It is also undisputed that the foreclosure notices were recorded in connection with Flowers' default on his loan with defendants. Therefore, the record reflects that there is no actual, present controversy between defendants and Peterson regarding any attempt by defendants to foreclose on Peterson's property, which undisputedly has a different legal description and county assessor's parcel number. (See *Babb*, *supra*, 3 Cal.3d at p. 848; *Jenkins*, *supra*, 216 Cal.App.4th at pp. 513-514.) The cause of action for declaratory relief accordingly lacks merit as a matter of law.

For these reasons, we determine that the trial court did not err in granting summary adjudication of the cause of action for declaratory relief.

**D.  *Injunctive Relief***

In the cause of action for injunctive relief, Peterson alleged that "Defendants have commenced a foreclosure action under the Deed of Trust and have scheduled a non-judicial sale for September 15, 2009" and sought to restrain defendants' "wrongful conduct." On appeal, Peterson contends that the trial court erred in granting summary adjudication because defendants' posting of the foreclosure notices on his property shows that they are wrongfully attempting to foreclose on his property and, therefore, the foreclosure proceedings should be enjoined. Defendants disagree, arguing that Peterson is not entitled to enjoin foreclosure of Flowers' property since he has no interest in that property.

We understand Peterson to seek an order enjoining defendants from foreclosing on his property. However, under the rules generally governing injunctive relief, we again find it determinative that the undisputed material facts show that defendants are not attempting to foreclose on Peterson's property.

20

"The 'purpose of a prohibitory injunction is to prevent future harm to the applicant by ordering the defendant to refrain from doing a particular act. [Citations.] Consequently, injunctive relief lies only to prevent threatened injury and has no application to wrongs that have been completed. [Citation.] It should neither serve as punishment for past acts, nor be exercised in the absence of any evidence establishing the reasonable probability the acts will be repeated in the future.' [Citation.]" (*Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1266 (*Huntingdon*), italics omitted.)

We reiterate that it is undisputed that the 2009 and 2012 foreclosure notices that were posted on Peterson's property contained the correct legal description for Flowers' property ("Lot 5, in Block X, as shown upon that certain map entitled, 'Capitola', filed for record in the office of the County Recorder on April 26, 1888, in Map Book 10, page 13, Santa Cruz County Records") and the correct county assessor's parcel number for Flowers' property (036-125-10). It is also undisputed that the foreclosure notices were recorded in connection with Flowers' default on his loan with defendants. Based on these undisputed material facts, it is apparent that defendants are not attempting to foreclose on Peterson's property.

We therefore determine that absent any actual threat by defendants to foreclose on Peterson's property, summary adjudication of the cause of action for injunctive relief was properly granted. (See *Huntingdon*, *supra*, 129 Cal.App.4th at p. 1266.)

### E. *Negligence*

Peterson alleged in the negligence cause of action that defendants had carelessly drafted the deed of trust for Flowers' property with an erroneous street address of 206 Hollister Avenue 1 and posted the notice of trustee's sale and notice of default on the wrong property. He argues that summary adjudication of the negligence cause of action should not have been granted because there are triable questions of fact as to "whether [he] will be forced to sell his property as distressed property due to Defendants' wrongful

21

posting of foreclosure notices on his property." In addition, Peterson argues that defendants have not shown that they were not negligent in drafting the deed of trust and the foreclosure notices with the wrong street address.

Defendants respond that summary adjudication was properly granted because Peterson "has not identified any actual harm caused by the posting of a Notice of Default on his property, rather than on the Flowers Property." Defendants also contend that since the legal description in the foreclosure notices posted on his property contained the correct legal description for Flowers' property, "there is simply no negligent act or any identified harm."

Our resolution of the issue is governed by the standard of review for an order granting summary adjudication. As we have discussed, a defendant moving for summary judgment has the initial burden of showing that a cause of action lacks merit because one or more elements of the cause of action cannot be established or there is a complete defense to that cause of action. (§ 437c, subd. (o); *Aguilar, supra*, 25 Cal.4th at p. 850.) We find that defendants have not shown that one or more elements of the cause of action for negligence cannot be established, or that there is a complete defense to the cause of action.

"To state a cause of action for negligence, a plaintiff must allege (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiff's damages or injuries. [Citation.]" (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 62.) "Generally, each person has a duty to exercise reasonable care in the circumstances and is liable to those injured by the failure to do so. [Citation.]" (*Avila v. Citrus Community College Dist*. (2006) 38 Cal.4th 148, 160 (*Avila*).)

Peterson's negligence claim arises from defendants' posting of the foreclosure notices for Flowers' property on Peterson's property in 2009 and 2012. On appeal, defendants concede that the foreclosure notices were "inadvertently" posted on

22

Peterson's property. In their motion for summary adjudication, defendants made no evidentiary showing regarding the circumstances that led to posting the foreclosure notices on the wrong property. They argued only that the error was inadvertent because both properties had the commonly known address of 206 Hollister Avenue. Defendants therefore failed to meet their initial burden to show that they did not breach their duty to exercise reasonable care under the circumstances. (See *Avila*, *supra*, 38 Cal.4th at p. 160.)

Alternatively, defendants failed to make a sufficient evidentiary showing that Peterson was not harmed by the erroneous posting of foreclosure notices on his property. Although defendants' evidence showed that Peterson's property was sold during bankruptcy proceedings to Hollister Holdings for $700,000, defendants did not show, for example, that the price was fair market value or that Peterson's interest in his property was not otherwise harmed. Their primary argument is that Peterson has failed to show that he sustained damage as a result of the erroneous posting. However, the burden did not shift to Peterson to show he was damaged because defendants did not meet their initial burden on summary adjudication to establish on the basis of undisputed facts that Peterson was not damaged. (See *Aguilar, supra*, 25 Cal.4th at pp. 850, 854.)

For these reasons, we determine that summary adjudication of the cause of action for negligence was improperly granted and we will direct the trial court to vacate the order and enter a new order denying summary adjudication of the cause of action.

### F. *Slander of Title*

In the cause of action for slander of title, Peterson alleged that defendants' erroneous posting of foreclosure notices on his property in 2009 and 2012 was defamatory because defendants were not his lenders and had asserted an interest in his property that they did not possess. Peterson further alleged that the slander of title had caused him to suffer damages, including diminution of the value of his property. He argues on appeal that the trial court erred in granting summary adjudication of the cause

23

of action for slander of title because the posted foreclosure notices falsely implied that defendants had a security interest in his property and were conducting a foreclosure sale, thereby causing a loss of market value.

According to defendants, summary adjudication was properly granted because the foreclosure notices posted on Peterson's property did not constitute publication of a false statement, since the notices stated the correct legal description of Flowers' property. Defendants also contend that Peterson cannot show a pecuniary loss due to the alleged slander of title.

As we will discuss, we again find that defendants have not met their initial burden on summary adjudication to show that one or more elements of the cause of action cannot be established, or that there is a complete defense to the cause of action.

" 'The elements of a cause of action for slander of title are "(1) a publication, (2) which is without privilege or justification, (3) which is false, and (4) which causes direct and immediate pecuniary loss." [Citations.]' [Citation.]" (*M.F. Farming, Co. v. Couch Distributing Co., Inc.* (2012) 207 Cal.App.4th 180, 198, fn. & italics omitted (*M.F. Farming*).) The element of publication does not require a recorded document. (*Id.* at p. 198, fn. 5; see *Phillips v. Glazer* (1949) 94 Cal.App.2d 673, 674 [slander of title action based on posted sign].) " 'If the matter is reasonably understood to cast doubt upon the existence or extent of another's interest in land, it is disparaging to the latter's title where it is so understood by the recipient. [Citation.]' [Citations.]" (*M & F Farming*, *supra*, at p. 199.)

Here, defendants have not met their initial burden on summary adjudication to make an evidentiary showing that the physical posting of Flowers' foreclosure notices on Peterson's property did not disparage Peterson's title to the property. (See *M & F Farming*, *supra*, 207 Cal.App.4th at p. 199.) Specifically, defendants did not show on the basis of undisputed facts that the posted foreclosure notices would not be reasonably

24

understood by passersby or other observers to indicate that Peterson was in default and his property was going to be sold at a foreclosure sale.

We are also not convinced that defendants met their initial burden to show that Peterson could not establish the element of pecuniary loss. "The main thrust of the cause of action is protection from injury to the salability of property [citations], which is ordinarily indicated by the loss of a particular sale, impaired marketability or depreciation in value [citations]." (*Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC* (2012) 205 Cal.App.4th 999, 1030.) " 'However, it is not necessary to show that a particular pending deal was hampered or prevented, since recovery may be had for the depreciation in the market value of the property [citation].' [Citation]." (*M.F. Farming*, *supra*, 207 Cal.App.4th at p. 199.)

Here, defendants argue that Peterson "cannot show a pecuniary loss from the alleged slander" because his alleged damages are speculative and unsupported. However, to prevail on summary adjudication, the defendant has the burden to show "that the plaintiff cannot establish at least one element of the cause of action by showing that the plaintiff does not possess, and cannot reasonably obtain, needed evidence. . . ." (*Aguilar*, *supra*, 25 Cal.4th at p. 854.) In their motion for summary adjudication, defendants did not meet this burden, since there was no showing on the basis of undisputed facts that Peterson did not possess and could not reasonably obtain evidence that his property had impaired marketability or was diminished in value due to the erroneously posted foreclosure notices.

Having determined that defendants did not meet their burden on summary adjudication, we will direct the trial court to vacate its order granting summary adjudication and to enter a new order denying summary adjudication of the cause of action for slander of title.

## G. *Quiet Title*

In his final cause of action, Peterson sought to quiet title in real property located at 206 Hollister Avenue 1 because defendants were claiming an adverse interest in the property. Peterson contends that the trial court erred in granting summary adjudication of this cause of action because defendants wrongfully posted foreclosure notices on his property, including posting a notice of trustee's sale after his attorney advised defendants of their error in posting the foreclosure notices on the wrong property.

In response, defendants acknowledge that foreclosure notices were "mistakenly placed" on Peterson's property. However, they contend that they have never sought an interest in Peterson's property and therefore summary adjudication of the cause of action for quiet title was properly granted.

A quiet title cause of action has two elements: (1) "the plaintiff is the owner and in possession of the land," and (2) "the defendant claims an interest therein adverse to [the plaintiff]." (*South Shore Land Co. v. Petersen* (1964) 226 Cal.App.2d 725, 740; see also § 761.020.[6]) We agree with defendants that the undisputed evidence shows that they have not claimed an adverse interest in Peterson's property.

---

[6] Section 761.020 provides: "The complaint shall be verified and shall include all of the following: [¶] (a) A description of the property that is the subject of the action. In the case of tangible personal property, the description shall include its usual location. In the case of real property, the description shall include both its legal description and its street address or common designation, if any. [¶] (b) The title of the plaintiff as to which a determination under this chapter is sought and the basis of the title. If the title is based upon adverse possession, the complaint shall allege the specific facts constituting the adverse possession. [¶] (c) The adverse claims to the title of the plaintiff against which a determination is sought. [¶] (d) The date as of which the determination is sought. If the determination is sought as of a date other than the date the complaint is filed, the complaint shall include a statement of the reasons why a determination as of that date is sought. [¶] (e) A prayer for the determination of the title of the plaintiff against the adverse claims."

26

The evidence shows, as we have discussed, that the 2009 and 2012 foreclosure notices that were posted on Peterson's property contained the correct legal description for Flowers' property ("Lot 5, in Block X, as shown upon that certain map entitled, 'Capitola', filed for record in the office of the County Recorder on April 26, 1888, in Map Book 10, page 13, Santa Cruz County Records") and the correct county assessor's parcel number for Flowers' property (036-125-10). It is also undisputed that the foreclosure notices were recorded in connection with Flowers' default on his loan with defendants. These undisputed material facts show as a matter of law that defendants were attempting to foreclose only on Flower's property and have not claimed an adverse interest in Peterson's property.

For these reasons, we determine that the trial court properly granted summary adjudication of the cause of action for quiet title.

## V. DISPOSITION

The judgment is reversed and the matter is remanded to the trial court with directions to (1) vacate its June 30, 2014 order granting summary adjudication of the third cause of action for negligence and to enter a new order denying summary adjudication of the third cause of action for negligence; and (2) vacate its June 30, 2014 order granting summary adjudication of the fifth cause of action for slander of title and to enter a new order denying summary adjudication of the fifth cause of action for slander of title. The parties shall bear their own costs on appeal.

_____
BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____
ELIA, ACTING P.J.

_____
MIHARA, J.