Filed 6/12/23  P. v. Newsom CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>CHRISTOPHER JAMES NEWSOM,<br><br>    Defendant and Appellant. | F083061<br><br>(Super. Ct. No. BF182802A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  David R. Zulfa, Judge.

Kevin J. Lindsley; John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Brook Bennigson and Eric L. Christoffersen, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Driving a stolen truck, appellant Christopher James Newsom absconded from the police during a traffic stop. A police pursuit ensued, during which, Newsom brandished a firearm at multiple officers, he struck another vehicle, and drove his vehicle head-on toward several police patrol vehicles as well as an officer standing in the street. After he fled on foot, Newsom was apprehended with the assistance of a police dog. Inside of a backpack found near where he was arrested, officers found a loaded sawed-off shotgun and three shotgun shells. Newsom was convicted of multiple offenses and sentenced to an aggregate term of 22 years in state prison.

He raises the following claims on appeal. First, he contends the trial court committed instructional error on count 13, his conviction for possession of a firearm by a person with a prior qualifying misdemeanor conviction (Pen. Code,[1] § 29805). Second, he submits there is insufficient evidence to support his conviction on count 13 because there was no evidence showing that he suffered a prior qualifying misdemeanor conviction under section 29805. Third, he contends that multiple portions of his sentence must be stayed pursuant to section 654. Finally, Newsom contends that following changes made to section 1170, subdivision (b), by the enactment of Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill No. 567), he is entitled to a new sentencing hearing.

We agree that instructional error on count 13 necessitates reversal of Newsom's conviction on this count. Because a full resentencing is required, the remainder of Newsom's claims are moot and we do not address them. The matter is remanded back to the lower court for further proceedings, including a retrial on count 13, upon the prosecutor's election.

---

[1] All undefined statutory citations are to the Penal Code unless otherwise indicated

# PROCEDURAL HISTORY

On April 1, 2021, the Kern County District Attorney's Office filed an amended information charging Newsom with receipt of a stolen vehicle (§ 496d, subd. (a), count 1); assault with a deadly weapon on a peace officer (§ 245, subd. (c), count 2 [Deputy Rickard]; count 6 [Deputy Newton]; count 7 [Deputy Gonzalez]; count 10 [Deputy Pucilowski]); reckless evasion from a peace officer (Veh. Code, § 2800.2, count 3); exhibition of a deadly weapon with intent to resist arrest (§ 417.8, counts 4 & 9); assault with a firearm on a peace officer (§ 245, subd. (d)(2), count 5 [Deputy Rickard]; count 8 [Deputy Pucilowski]); possession of a firearm by a felon (§ 29800, subd. (a)(1), count 11); possession of ammunition by a felon (§ 30305, subd. (a)(1), count 12); possession of a firearm after a qualifying misdemeanor conviction (§ 29805, count 13); resisting arrest (§ 148, subd. (a)(1), count 14); and hit and run driving (Veh. Code, § 200002, subd. (a), count 15).

The information further alleged Newsom had suffered one prior strike conviction (§§ 667, subds. (c)-(j), 1170.12, subds. (a)-(e)); that he was convicted of a prior serious felony (§ 667, subd. (a)); he was armed with a firearm (§ 12022, subd. (a)(1), counts 1-3, 6-7, 10); he personally used a firearm (§ 12022.5, subd. (a), counts 3, 5, & 8), and that he personally used a firearm in the commission of a specified felony (§ 12022.53, subd. (b), counts 5 & 8).

On June 3, 2021, a jury found Newsom guilty on counts 1, 3, 6, and 11 through 15. On count 7, the jury found Newsom guilty of the lesser included offense of assault on a peace officer (§ 241, subd. (c)). As to counts 1, 3, and 6, the jury found that Newsom was armed with a firearm (§ 12022, subd. (a)(1)). The jury hung on the remaining counts and enhancement allegations. The court found the prior conviction allegations to be true.

On July 1, 2021, the trial court sentenced Newsom to an aggregate determinate term of 22 years in state prison.

Newsom filed a timely notice of appeal.

**STATEMENT OF FACTS**

On October 5, 2020, or October 6, 2020, T.N., reported his truck, a Toyota Tacoma, stolen.

On October 15, 2020, at around 6:30 p.m., Kern County Sheriff's Deputy Daniel Rickard was on patrol when he observed a black Toyota Tacoma make an abrupt lane change without using a turn signal. The truck did not have a rear license plate on it. Newsom, who did not have permission to use the truck, was driving.

Deputy Rickard initiated a traffic enforcement stop after observing Newsom make another unsafe driving maneuver. When Deputy Rickard activated his emergency lights, Newsom continued to drive and displayed his middle finger out the window at Deputy Rickard.

After a few minutes, Newsom pulled over. Before Deputy Rickard could exit his patrol vehicle, Newsom drove away. Deputy Rickard initiated a police pursuit.

During the course of the pursuit, Newsom made a U-turn, passed Deputy Rickard on the opposite side of the street, and pointed a black object at him that initially appeared to be a baton. Deputy Rickard subsequently recognized the object. It was a 20-gauge sawed-off shotgun.

Newsom drove down a dead-end street between two cement posts, striking the posts as he passed between them. Deputy Rickard was unable to follow Newsom.

A police helicopter, as well as numerous other police patrol vehicles, joined the pursuit. As the pursuit continued, Newsom struck a silver sedan and continued driving. The pursuit was terminated because of the danger involved.

4.

Sheriff's deputies trailed the area and continued to follow Newsom on parallel streets. At one point, Newsom swerved the truck towards Kern County Sheriff's Deputy Nathan Pucilowski's patrol vehicle. Deputy Pucilowski had to swerve to avoid a collision.

As Newsom passed Deputy Pucilowski, he slowed down to approximately four or five miles per hour and drove within four feet of Deputy Pucilowski's vehicle. Deputy Pucilowski saw what appeared to be a firearm sticking out of the driver's side window of the truck.

After observing Newsom strike the silver sedan, Kern County Sheriff's Deputy Christopher Gonzalez saw Newsom driving towards him. Newsom headed directly towards Deputy Gonzalez's patrol vehicle, causing Deputy Gonzalez to quickly back up his vehicle to avoid a head-on collision.

At some point, Kern County Sheriff's Deputy Justin Newton followed Newsom down a cul-de-sac where Newsom had stopped. As Deputy Newton approached the Tacoma, Newsom accelerated rapidly and drove head-on toward Deputy Newton's patrol vehicle. To avoid a collision, Deputy Newton swerved to the right, veering into a parked car. Newsom momentarily stopped the Tacoma directly next to the driver's side door of Deputy Newton's patrol vehicle. He had stopped so closely to Deputy Newton's patrol vehicle, Deputy Newton could not open his door.

After Newsom fled the cul-de-sac, Deputy Newton talked to K.G., the owner of the parked car he had run into. Deputy Newton was in the street taking pictures of the vehicles, when Newsom came around the corner. K.G. pulled Deputy Newton out of the street. Newsom could have easily struck Deputy Newton.

Nearly 30 minutes after the initial pursuit began, Newsom stopped his vehicle. He exited the Tacoma and fled on foot.

5.

Deputy Rickard found Newsom on a residential property. Newsom was wearing dark clothing and was carrying a black backpack. Deputy Rickard ordered Newsom to stop, twice. Newsom jumped over a fence.

Newsom was eventually apprehended with the assistance of Deputy Gonzalez's K9 partner. Officers found two live shotgun shells in the front pocket of Newsom's pants. In the bushes near where Newsom was arrested, officers found a black backpack. Inside, they found a loaded sawed-off shotgun and three 20-gauge shotgun shells. Inside of the Tacoma, officers found the back piece of a shotgun.

## DISCUSSION

### I.      Instructional Error on Count 13

Under subdivision (a)(1) of section 29805, persons convicted of certain misdemeanors are subject to a 10-year prohibition against possessing firearms. In count 13, Newsom was charged and ultimately convicted of violating this statute. Because Newsom was also convicted of the offense of felon in possession of a firearm on count 11, his sentence on count 13 was stayed pursuant to section 654.

He contends that due to an instructional error, the jury convicted him on count 13 without finding that he was previously convicted of a qualifying misdemeanor. Newsom is correct. Because the error was not harmless, we conclude that Newsom's conviction on count 13 must be reversed.

#### A.      Background

Newsom was charged with possession of a firearm by a felon (§ 29800, subd. (a)(1); count 11); possession of ammunition by a felon (§ 30305, subd. (a)(1); count 12); and possession of a firearm after a section 273.6 conviction (§ 29805; count 13). These charges required the prosecutor to prove, in relevant part, that Newsom had suffered a prior qualifying conviction. Counts 11 and 12 required the prosecutor to prove that

6.

Newsom had suffered a prior felony conviction, whereas count 13 required proof of a prior misdemeanor conviction enumerated within subdivision (a)(1) of section 29805, occurring within 10 years of the date Newsom had possessed a firearm.

At the suggestion of the trial court, the parties agreed to enter into a stipulation that would address Newsom's prior convictions in counts 11 through 13. After further discussion about the proposed stipulation, and the inclusion of a modification suggested by the trial court, trial counsel prepared a written copy of the stipulation and submitted it to the prosecutor for his review.

Before the stipulation was finalized, the prosecutor commented, "[t]he way the stipulation is written, it basically refers to the specific jury instruction. So to the extent that if there is some kind of change in the jury instructions that would make that stipulation not make sense, I would suggest now that when we sign the stipulation, it's with the understanding that the effectiveness of the stipulation—well, that it's [*sic*] effect survives."

The trial court responded:

> "Certainly. And I think that's the intent that everyone has here. I don't think that [trial counsel] or [the prosecutor] are trying to somehow manipulate the situation to either, at the last moment, back door evidence that might otherwise not be admissible. Or, conversely, at the last moment, box out evidence that might have otherwise been admissible. And so, I trust both of you are operating above board as it relates to the preparation of the stipulation."

The stipulation agreed upon by the parties, and ultimately read to the jury, was as follows:

> "It is hereby stipulated between the parties that Mr. Christopher Newsom suffered felony convictions prior to October 15, 2020. This stipulation is for the

sole purpose of Element 3 in Counts 11 and 12. [¶] Furthermore, this stipulation is for the sole purpose of Elements 3 and 4 in Count 13."

After reading the stipulation to the jury, the court instructed the jury as follows: "You must accept what is stipulated to as fact. How it fits in and how it is to be utilized during deliberations will become more clear when I provide you the law that provides the elements for each of the alleged crimes."

CALCRIM No. 2511, the pattern jury instruction for possession of a firearm by a felon (§ 29800, subd. (a)(1), count 11), is the same instruction used for possession of a firearm by a person with a qualifying misdemeanor (§ 29805, count 13). This instruction provides the following, in relevant part:

"The defendant is charged [in Count ] with unlawfully possessing a firearm [in violation of <insert appropriate code section[s]>].

"To prove that the defendant is guilty of this crime, the People must prove that:

"1. The defendant (owned/purchased/received/possessed) a firearm;

"2. The defendant knew that (he/she) owned/purchased/received/possessed) the firearm;

[AND]

"3. The defendant had previously been convicted of (a/two) felony/misdemeanor[s])(;/.)

[AND]

"*<Alternative 4A—give only if the defendant is charged under Pen. Code, § 29805.>*

"[4. The previous conviction was within 10 years of the date the defendant possessed the firearm.]"

Here, CALCRIM No. 2511 was modified as follows:

8.

"The defendant is charged in Counts 11 and 13 with unlawfully possessing a firearm in violation of Penal Code section 29800(a) — Count 11 - and 29805 — Count 13.

"To prove the defendant is guilty of each crime, the People must prove:

"1. The defendant possessed a firearm;

"2. The defendant knew he possessed the firearm;

"AND

"3. The defendant had previously been convicted of a felony.

[¶...¶]

"The defendant and the People stipulated, or agreed, the defendant was previously convicted of a felony. This stipulation means you must accept this fact as proved.

"Do not consider this fact for any other purpose."

Thus, neither the stipulation nor the jury instruction correctly addressed the elements of the offense of possession of a firearm by a person with a qualifying misdemeanor (§ 29805, subd. (a)(1)).

In closing argument, both parties discussed the effect of the stipulation in relation to counts 11 through 13. The prosecutor explained, "The stipulation has to do with Mr. Newsom having suffered felony convictions in the past, prior to October 15." Referring to counts 11 through 13, he told the jury that Newsom "had been previously convicted of the felonies" and the jury must accept that fact as true. Trial counsel made identical comments in his closing argument, explaining that the stipulation "proves … Mr. Newsom had a past felony conviction."

The jury verdict form on count 13, which was prepared by the prosecutor, states the following:

**"THIRTEENTH COUNT**

"We, the Jury, empaneled to try the above entitled case, find the defendant, CHRISTOPHER NEWSOM, **guilty** of Felony, to wit: Possession of a Firearm by a Person Prohibited by Felony or Misdemeanor Conviction, in violation of 29805 of the Penal Code, as charged in the thirteenth count of the Information."

As can be seen, all parties were under the mistaken assumption that a prior felony conviction would satisfy the statutory elements for a conviction under subdivision (a)(1) of section 29805.

## A.     Judicial Estoppel

The Attorney General asks this court to invoke the doctrine of judicial estoppel to foreclose Newsom's challenge to count 13.

" ' " 'Judicial estoppel precludes a party from gaining advantage by taking one position, and then seeking a second advantage by taking an incompatible position. [Citations.]  The doctrine's dual goals are to maintain the integrity of the judicial system and to protect parties from opponents' unfair strategies. [Citation.]  Application of the doctrine is discretionary.' " [Citation.]  The doctrine applies when "(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake." ' " (*People v. Castillo* (2010) 49 Cal.4th 145, 155, italics omitted.) "Because of its harsh consequences, the doctrine should be applied with caution and limited to egregious circumstances." (*Gottlieb v. Kest* (2006) 141 Cal.App.4th 110, 132.)

We are not persuaded that the instant case presents circumstances so egregious that judicial estoppel should foreclose Newsom's claim of instructional error.  The stipulation, the parties' comments during their closing arguments, the erroneously

modified jury instruction, and the verdict form on count 13, demonstrate that all of the parties were operating under the same mistaken assumption as to the elements required for proving a violation of subdivision (a)(1) of section 29805. That is, they were under the assumption that a felony conviction could support a violation of the statute.

Bad faith is not one of the technical elements required to invoke judicial estoppel. (See *DotConnectAfrica Trust v. Internet Corp. for Assigned Names & Numbers* (2021) 68 Cal.App.5th 1141, 1162.) However, "judicial estoppel is usually limited to cases where a party misrepresents or conceals material facts." (*California Amplifier, Inc. v. RLI Ins. Co.* (2001) 94 Cal.App.4th 102, 118.)

There is no indication that trial counsel was attempting to mislead the court when he drafted the stipulation, nor is there any indication that he otherwise engaged in intentional wrongdoing. (*Levin v. Ligon* (2006) 140 Cal.App.4th 1456, 1484 [" ' "the doctrine of judicial estoppel does not apply 'when the prior position was taken because of a good faith mistake rather than as part of a scheme to mislead the court' " ' "]; *Haley v. Dow Lewis Motors, Inc.* (1999) 72 Cal.App.4th 497, 509-510 [" 'An inconsistent argument sufficient to invoke judicial estoppel must be attributable to intentional wrongdoing' "].)

Nor can we say that Newsom is seeking to employ an unfair strategy by challenging the jury instruction on count 13 on appeal. Although trial counsel drafted the stipulation, it was ultimately agreed upon by the prosecutor and reviewed by the trial court. The error was simply overlooked by everyone. Contrary to the Attorney General's assertion that the erroneous jury instruction given on count 13 was attributable to the stipulation, and by implication, trial counsel, the record shows all parties involved were under the mistaken assumption that a violation of subdivision (a)(1) of section 29805 could be supported by a prior felony conviction.

The record leaves no doubt that the parties intended to stipulate to the fact that Newsom had suffered prior convictions for purposes of counts 11 through 13. However, the parties' intent cannot overcome the fact that neither the stipulation nor the jury instructions correctly reflected the statutory elements of section 29805. And, although the erroneous instruction was presumably drafted by the trial court versus the prosecutor, the result is the same. It is the prosecutor's duty to prove all elements of a charged offense beyond a reasonable doubt. (*Blakely v. Washington* (2004) 542 U.S. 296, 313 [Sixth Amendment requires that the "prosecutor prove to a jury all facts legally essential to the punishment"].) Here, the parties inadvertent but nonetheless mistaken understanding of the law resulted in a failure to prove that Newsom had suffered a prior qualifying misdemeanor conviction within 10 years of the date he was in possession of a firearm. (§ 29805, subd. (a)(1).)

Based on the foregoing, we are not persuaded that application of judicial estoppel would promote the dual purposes of the doctrine. (See *Jhaveri v. Teitelbaum* (2009) 176 Cal.App.4th 740, 751 [judicial estoppel is designed "to maintain the integrity of the judicial system and protect parties from unfair strategies of their opponents"].) Although stipulations between parties should generally be encouraged, application of judicial estoppel here would effectively uphold a jury instruction that incorrectly states the law. (*Leonard v. City of Los Angeles* (1973) 31 Cal.App.3d 473, 476 ["a stipulation between the parties may not bind a court on questions of law, and this includes legal conclusions to be drawn from admitted or stipulated facts"].)

The Attorney General observes that he could have introduced evidence of Newsom's prior convictions if not for the stipulation. He further contends that Newsom received a substantial benefit from the stipulation because the jury heard limited details pertaining to his prior convictions.

12.

Judicial estoppel is not grounded in detrimental reliance or injury in fact. (*People v. Castillo*, *supra*, 49 Cal.4th at p. 156 ["The doctrine of judicial estoppel is designed to protect the integrity of the legal system as a whole, and does not require a showing of detrimental reliance by a party"].) Indeed, "detrimental reliance or induced [action or] forbearance … simply has no relevance to application of judicial estoppel." (*Ibid*.) " ' "The gravamen of judicial estoppel … is the intentional assertion of an inconsistent position that perverts the *judicial machinery*." ' " (*Gottlieb v. Kest, supra,* 141 Cal.App.4th at p. 132.) Thus, it is of no consequence that Newsom benefited from the stipulation, nor do we find relevant the fact that the prosecutor could have adduced evidence of Newsom's prior convictions.

In light of the erroneously modified jury instruction, which failed to correctly state the law, in addition to the fact that the error here was both unintentional and is attributable to all parties, we decline to apply judicial estoppel to foreclose Newsom's claim of instructional error.

### B. Prejudicial Error

It is undisputed that the jury was erroneously instructed on count 13, which was predicated upon a finding that Newsom had been previously convicted of a felony rather than a qualifying misdemeanor occurring within 10 years of the date he possessed a firearm. We conclude that based upon the instant record, the error is not harmless.

A trial court's failure to instruct on all elements of an offense is a constitutional error "subject to harmless error analysis under both the California and United States Constitutions." (*People v. Flood* (1998) 18 Cal.4th 470, 475.) Under the federal Constitution, the standard is whether the instructional error was harmless beyond a reasonable doubt under *Chapman v. State of California* (1967) 386 U.S. 18 (*Chapman*). (*Flood*, at p. 504.)

13.

To determine whether an instructional error, such as the one that occurred here, is harmless under *Chapman's* heightened standard, a reviewing court asks: "Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?" (*Neder v. United States* (1999) 527 U.S. 1, 18.) "If the reviewing court determines beyond a reasonable doubt that any rational juror would have made the additional findings, based on the jury's actual verdict and the evidence at trial, the error is harmless because the presentation of the invalid theory to the jury made no difference. The error did not contribute to the verdict." (*In re Lopez* (2023) 14 Cal.5th 562, 589.)

There is no prejudice under *Chapman* if "the omitted element was uncontested and supported by overwhelming evidence." (*Neder v. United States*, *supra*, 527 U.S. at p. 17.) " 'Where an instruction omits some elements of the offense or allegation, but the elements were uncontested and supported by overwhelming evidence, it would not necessarily follow that the trial was fundamentally unfair or an unreliable vehicle for determining guilt or innocence.' " (*People v. Merritt* (2017) 2 Cal.5th 819, 827, citing *People v. Mil* (2012) 53 Cal.4th 400.)

Here, the omitted instructional elements under subdivision (a)(1) of section 29805 was proof of a qualifying misdemeanor conviction occurring within 10 years of Newsom's act of possessing a firearm. Although the parties' stipulation was undoubtedly intended to obviate the production of formal proof of Newsom's prior conviction, the stipulation did not explicitly address the type of the prior conviction required by subdivision (a)(1) of section 29805. Moreover, evidence of Newsom's 2016 misdemeanor conviction for violation of a criminal protective order was not otherwise proven by evidence considered by the jury. We therefore cannot say that the omitted elements, were "supported by overwhelming evidence," such that the jury would have

14.

reached the same verdict absent the instructional error. (*Neder v. United States, supra,* 527 U.S. at p. 17.)

The Attorney General submits that the instructional error is harmless because assuming the jury had been properly instructed on count 13, the verdict would have been the same. Based upon the express language of the stipulation and the parties' comments in closing argument, we are not persuaded *beyond a reasonable doubt* that a rational jury would have necessarily found the missing elements true.

To be clear, assuming the jury had been properly instructed on count 13, a rational jury could have found the missing elements required to support a conviction on this count. The stipulation clarifies, in relevant part, that it is "for the sole purpose of Elements 3 and 4 in Count 13." Assuming the jury had been correctly instructed, elements 3 and 4 would have referred to a prior misdemeanor conviction occurring within 10 years of the date the defendant was in possession of a firearm. (See CALCRIM No. 2511 ["3. The defendant had previously been convicted of …misdemeanor[;] [AND] 4. The previous conviction was within 10 years of the date the defendant possessed the firearm"].)

However, the stipulation states that Newsom had suffered "*felony* convictions prior to October 15, 2020." A fact which the parties told the jury to accept as true during their comments in closing argument. The parties' closing arguments thus reinforced the conclusion that Newsom had suffered a felony conviction, despite what a correct instruction could have permitted the jury to conclude. (See *People v. Merritt, supra,* 2 Cal.5th at p. 831 [the parties' closing arguments are "a factor to consider in determining prejudice"].) Under the circumstances, we cannot be sure, with the level of confidence required by *Chapman*, that the jury would have disregarded the fact that the stipulation

was to a prior felony to find that Newsom had in fact suffered a prior qualifying misdemeanor conviction.

Based upon the foregoing, we accept Newsom's assertion that count 13 must be reversed for instructional error. Because we reverse this count for instructional error rather than insufficient evidence, the prosecutor may retry Newsom on count 13, if he elects to do so. (See, e.g., *People v. Wetle* (2019) 43 Cal.App.5th 375, 388 [concluding that retrial is not barred by the Double Jeopardy Clause following reversal for instructional error if the evidence is sufficient to support the conviction].)

## II.     Newsom's Remaining Claims

Newsom raises additional claims on appeal, arguing: (1) there is insufficient evidence to support his conviction on count 13; (2) the trial court erred by failing to stay (§ 654) the gun enhancements attached to counts 1 and 3, his punishment for possession of a firearm by a felon (count 11), and his punishment for possession of ammunition by a felon (count 12); (3) recent amendments to section 1170, subdivision (b), made effective by Senate Bill No. 567, requires remand for a new sentencing hearing.

In light of our conclusion that Newsom's conviction on count 13 must be reversed, Newsom's remaining contentions are moot. He is entitled to a full resentencing hearing on all counts. (*People v. Buycks* (2018) 5 Cal.5th 857, 893 ["when part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances' "].) We therefore do not address Newsom's remaining claims.

### DISPOSITION

Newsom's conviction on count 13 is reversed and his sentence is vacated. The matter is remanded back to the trial court for further proceedings. The People shall have 60 days from the date of the remittitur in which to file an election to retry Newsom on

count 13.  If the People elect not to retry him, the trial court shall resentence Newsom accordingly.  Following the conclusion of proceedings, the court shall amend the abstract of judgment in a manner consistent with this disposition and forward copies of the amended abstract to the appropriate law enforcement and custodial officials.  In all other respects the judgment is affirmed.

SMITH, J.

WE CONCUR:


POOCHIGIAN, Acting P. J.


DETJEN, J.

17.